CHARLES A. SEEKINS *vs.* WALTER F. KING.

FEBRUARY 18, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.    This is a suit in equity begun by a bill of complaint filed in the superior court by Charles A. Seekins for the annulment and cancellation of a written agreement of September 25, 1934, signed by him as vendee and the respondent as vendor, for the purchase and sale of a farm situated in the town of Cumberland in this state.    By this agreement it was provided that the farm was to be conveyed to the complainant on or before October 30, 1934, by a warranty deed of the respondent, for $1500, of which $100 was paid on the signing of the agreement, $300 was to be paid on the delivery of the deed, and the remainder by a promissory note of the complainant secured by a mortgage on the farm. The respondent was a real estate broker.

The complainant in his bill made many allegations, of which the following are the material and important ones for the purposes of this opinion.    He alleged that he employed

the respondent as his agent, to procure for him a farm which would be suitable for the complainant's needs; that the respondent stated to him that there was a farm in the town of Cumberland which could be purchased for $1300, payable partly in cash and partly by a note secured by a mortgage; that they visited this farm together; that the respondent never told him that the farm was then owned by an incompetent person then under guardianship, which was the fact; that the complainant, then, relying implicitly on these representations by the respondent and believing them to be true and that the respondent would serve him loyally as his agent in the purchase of this farm, orally agreed to buy it on these terms, on which the respondent had stated to him it could be bought; that on September 25, 1934 he again met the respondent, who told him that the purchase price was $1500.

He also alleged that, still having confidence in the respondent as his agent, he paid him $100 on account of the purchase price of this same farm and signed the document which afterwards proved to be the written agreement, above described, for the purchase and sale of this farm; that the respondent did not then explain to him the terms and meaning of the document or disclose that neither the respondent nor any other person had the legal right to sell or agree to sell the farm; that on October 1, 1934, he paid the respondent a further sum of $300 on the purchase price of the farm; that a little later he learned the facts that the owner of the farm was under guardianship as an incompetent person and that her guardian was not authorized to sell the farm; that he promptly thereafter on October 11, 1934, notified the respondent that he repudiated any agreement as to the farm and made a demand for the return of the $400 paid, which the respondent refused, insisting that the complainant perform the agreement; and that on that same day the owner's guardian was authorized by the probate court to sell the farm for not less than $1200.

The complainant further alleged that on September 25, 1934 the respondent made an agreement with a real estate broker by the name of Sullivan that the latter would buy the farm from the guardian for $1200, if and when she was authorized to sell it for that sum, and that it should be sold to the complainant for $1500 and the difference divided equally between the respondent and Sullivan; and that the existence of this agreement between the respondent and Sullivan and the fact that the farm could be bought for $1200 were unknown to the complainant until they were discovered by his attorney on or about October 11, 1934.

In the respondent's answer he stated that he was not employed by the complainant as his agent to procure a farm for him; that he showed this farm to the complainant and told him that its purchase price was $1500, which could be paid by a small down payment and a mortgage for the remainder, payable in one year; that he told the complainant that the owner of the farm was under guardianship and that permission of the probate court of Cumberland would have to be given before it could be sold; and that a petition was filed in that court and the guardian was given permission to sell the farm.

He also alleged that the complainant understood the agreement of purchase and sale, when he signed it, and then knew all about the probate proceedings, which were explained to him, and that he was aware of every step taken in those proceedings; that the complainant knew that the respondent had a contract to buy the farm from the guardian; and that the respondent refused to cancel his agreement with the complainant or to return the $400 paid, but stood ready to perform it.

By way of cross bill the respondent reasserted by reference the statements of his answer and prayed for a decree for specific performance of the agreement. The complainant filed a replication, and also an answer to the respondent's allegations by way of cross bill so far as inconsistent with the

bill of complaint. Before the case was heard in the superior court the complainant died and his widow, Etta L. Seekins, was appointed the administratrix of his estate and took his place as complainant in this suit.

At the hearing in the superior court, her attorney, in trying to prove the allegations of the bill, called upon the respondent himself to take the witness stand and questioned him; and introduced only the testimony thus obtained and some documentary evidence. The respondent testified then and later that when the agreement was signed, he had an option to buy the farm for $1200, if the probate court authorized its sale for that price, and for that option had paid $25 to Sullivan, the broker, who had the property for sale; and that some time later he, the respondent, exercised that option, and in December 1935 sold the farm to a Mr. Gagnon for $1500. It was also shown, by the respondent's testimony and that of Sullivan, that each of them got $150 of the $400 paid by the complainant, the arrangement between them apparently being for an equal division of any profit made by the purchase and sale of the farm; and that the guardian got the remaining $100, to be credited on the purchase price of the property. She also testified to the receipt of this money by her and that in September 1934 she received $25 from the respondent for an option.

At the conclusion of the evidence on the merits of the case, the respondent made a motion that the bill of complaint be dismissed, for the reason that it was based on the ground of actual fraud practiced by the respondent on the complainant and that no such fraud had been proved. The justice by whom the case was heard agreed with the respondent's contention that no fraud had been proved, but called attention to the fact that a bill of complaint based on actual fraud, which was not proved, would, under sec. 39 of general laws 1923, chap. 339, as amended by public laws 1929, chap. 1338, be retained for the determination of any other issues pre-

sented by the bill, if the respondent consented to such retention.

The respondent refused to consent and insisted on his motion, but the justice denied it. The justice then ruled that the agreement was binding on the complainant and that he had violated it, but that his successor, as administratrix of his estate, was entitled to recover the $400 paid on the agreement, less any damages which the respondent could show that he had suffered from the complainant's default. The bill was therefore retained for this purpose and the hearing was resumed, to permit the respondent to prove such damages.

The respondent then introduced evidence of such damages and the justice ruled that they amounted to $200 and that the substituted complainant was entitled to a decree for the return of $200 out of the $400 which the original complainant had paid to the respondent. Accordingly a decree was entered denying the complainant's prayer for cancellation of the agreement, finding that the respondent was entitled to damages in the sum of $200, ordering him to pay to the substituted complainant the sum of $200, being the remainder of the sum of $400, and denying and dismissing the respondent's cross bill. The case is now before us on the appeal of each of the parties from this decree.

An examination and consideration of the bill of complaint have convinced us that it is based on allegations of actual fraud committed by the respondent. It is alleged that the respondent was employed by the complainant to act as his agent in the purchase of a farm; and acts of commission and concealment by the respondent are alleged which would clearly be serious violations of an agent's duty to his principal. Such acts would, in our opinion, clearly constitute actual and not merely constructive fraud. 2 Pomeroy on Eq. Juris. § 901. An examination and consideration of the evidence have convinced us that the justice of the superior

court was right in ruling that actual fraud by the respondent was not proved.

Before the above-mentioned P. L. 1929, chap. 1338, added sec. 39 to G. L. 1923, chap. 339, it was the well settled law of this state that if a bill of complaint is based on actual fraud and such fraud is not proved, the bill must be dismissed, without the determination of any other issue presented by the pleadings in the case. *Grant* v. *Wilcox*, 44 R. I. 94, 115 A. 707; *The Thornley Supply Co., Inc.* v. *Madigan*, 48 R. I. 271, 137 A. 385; *Dillon* v. *Dillon*, 49 R. I. 84, 140 A. 193. See also our very recent opinion in *Korjian* v. *Boghigian*, 60 R. I. 73. No change has been made in this established rule of law by the act passed in 1929 and above referred to, except when such a bill of complaint presents an issue or issues in addition to that of actual fraud and the respondent consents to the retention of the bill for the determination of such other issue or issues. There was no such consent of the respondent in this case, and therefore the bill of complaint should have been dismissed, on the motion of the respondent, under the general rule and not retained for the purpose of awarding a return to the estate of the original complainant of a part of the $400 paid by him to the respondent. The respondent's appeal from the decree must be sustained on that ground and the appeal of the substituted complainant denied.

As to the question whether the cross bill would be eliminated from the case by the dismissal of the bill on the above ground, we need not consider that question, since the evidence clearly shows that the respondent, after the complainant had repudiated the agreement, exercised his option to purchase the farm for $1200 and afterwards sold it for $1500, which was the purchase price named in his agreement with the complainant, thus rendering himself unable to perform that agreement. Therefore his cross bill was properly dismissed and his appeal from the decree cannot be sustained on the ground of such dismissal. Under the circumstances

of this case we are of the opinion that the finding of the justice of the superior court, incorporated in the decree, that the respondent is entitled to damages in the sum of $200 was not a proper finding and is not *res judicata* between the parties.

Since we have decided that the bill of complaint must be dismissed, because it is based on actual fraud and no such fraud was shown, the dismissal should be without prejudice to any remedy which the substituted complainant may have on any ground other than actual fraud by the respondent. *Grant* v. *Wilcox, supra; The Thornly Supply Co., Inc.* v. *Madigan, supra; Dillon* v. *Dillon, supra.*

The appeals of both parties from the decree are sustained, the decree appealed from is reversed, and the cause is remanded to the superior court, with direction to enter a decree dismissing both the bill of complaint and the cross bill, but without prejudice to any remedy, equitable or legal, which the substituted complainant may have against the respondent on any ground other than actual fraud, and also without prejudice to any legal remedy which the respondent may have against the estate of the original complainant.

*Kingsley L. Bennett,* for complainant.

*Joseph T. Witherow,* for respondent.