305 A.2d 112.
ARMANDO MATARESE. *vs.* PAOLO CALISE.

MAY 29, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

PAOLINO, J. This case is before us on the defendant's appeal from a judgment entered in the Superior Court ordering the defendant to convey to the plaintiff certain real estate located in Forio, Ischia, Italy.

On April 3, 1969, plaintiff commenced this civil action against defendant by filing a complaint in the Superior Court in Providence. He alleges in the complaint that he engaged defendant in March, 1966[1] to purchase certain real estate for him which was located in Forio, Ischia, Italy. He further alleges that he paid $3,000 to defendant for the purchase of said property but that defendant fraudulently purchased and recorded the same in his own name. The plaintiff prayed for an accounting of the money paid to defendant, for an order requiring defendant to convey by deed to plaintiff the property in question, for money damages, and for such other relief as the court might deem just and equitable. The defendant filed an answer in which he denied the essential allegations of the complaint and claimed a trial by jury.

At a pre-trial conference it was agreed by counsel and the trial justice that the relief requested was equitable in nature and that the case would be tried to the court and an advisory jury under Super. R. Civ. P. 39(c).[2] The case was heard on that basis. Certain questions were submitted to the advisory jury. The jury answered "no" to

---

[1]The complaint as originally filed stated "March 1968" but it was amended to read "March 1966" in order to conform to the evidence.

[2]Rule 39(c) reads as follows:

"Advisory Jury and Trial by Consent. In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right."

the question of whether there was a meeting between plaintiff and defendant around March of 1966 in Forio and answered "yes" to the question of whether in September or October, 1968, plaintiff sent $3,000 from Italy to defendant in the United States. The trial justice disagreed with the jury's answer that there was no meeting between plaintiff and defendant around March, 1966 and proceeded to make his own independent findings of fact and to decide the case as if no jury had been employed.

The pertinent facts, as found by the trial justice, are as follows. The plaintiff was a businessman in the town of Forio on the island of Ischia which is located off the coast of Naples. The defendant was born in Italy but was an American citizen by virtue of the American citizenship of his mother. He came to this country from Forio in 1955. He made a wedding trip to Forio in 1959 and thereafter returned to this country and lived in North Providence, Rhode Island.

The property involved in this case was formerly owned by one Anna Coppa DiMaio, who was born in this country and had never been to Italy. Her brother, Philip Coppa, who owned an unimproved parcel of land adjacent to that of his sister, occupied a residence located on Anna's land. In 1954 plaintiff purchased the unimproved parcel from Philip. He rented from Philip a portion of the property owned by Philip's sister, Anna. Around 1965 plaintiff made plans to erect a large building on the land he bought from Philip, and, in 1966, started construction. The plaintiff needed Anna's property because his building encroached on a portion thereof, and he decided to attempt to purchase it. At the time plaintiff did not know where Anna resided in the United States. Philip continued to collect the rent for occupancy of his sister's land, but he did not give plaintiff any information about where Anna was living.

In March, 1966, defendant was again visiting in Forio,

Italy. He had previously lived in Providence for about a year and a half at the home of Anna's stepsister. At the hearing in the Superior Court plaintiff testified that in March, 1966, defendant went to plaintiff's store in Forio and that a conversation took place between them about the purchase of Anna's land. The defendant, in his testimony, denied that he had any such conversation with plaintiff.[3] This conversation was witnessed by an unknown barber and by one, Gaetano DiCostanzo, who lived in Forio in 1966, but who came to this country in 1967. The latter testified for the plaintiff and corroborated his testimony at the trial.

The trial justice in his decision found that there was a meeting in March, 1966, between plaintiff and defendant in Forio. He expressly rejected defendant's testimony and accepted plaintiff's and DiCostanzo's testimony about the March, 1966 meeting. He found as a fact that the conversation between plaintiff and defendant was in substance as follows:

> "Plaintiff knew that defendant was returning to the United States and therefore he explained to defendant his reasons for needing the property owned by Anna Coppa DiMaio. Plaintiff asked defendant, when he returned to the United States, to try to see Anna Coppa DiMaio and to purchase the property for him at any cost since he had started construction of his building and a portion of the foundation was on that property. Plaintiff further stated that he would send defendant money when requested to make a down payment and later would send defendant a power of attorney so that a deed could be transferred to plaintiff and defendant could act fully on plaintiff's behalf. Plaintiff also stated that if defendant would secure the property for him, he would give defendant the entire top floor of the

[3]The trial in the Superior Court commenced on September 20, 1971. The defendant was called as an adverse witness by plaintiff. The hearing concluded on October 26, 1971, decision was rendered on January 6, 1972 and judgment entered on January 28, 1972.

building on the Anna Coppa DiMaio property in which Philip Coppa was then living. Defendant stated that he had learned where Mrs. DiMaio lived and he would do his best to convince her to sell the property and make a contract with her for plaintiff. That was the substance of the relevant portions of the conversation. Defendant left Forio for the United States a week or two later."

The facts, as found by the trial justice, continue as follows. After defendant left Italy he corresponded with his mother in Forio concerning the property, and plaintiff kept in touch with her. The defendant contacted Anna in New York and in September, 1968, in New York, secured a deed to her property but placed the property in his own name. After the defendant purchased the property, he sent a telegram to his mother in Italy stating that the property had been bought for $22,000 and asking that $3,000 be sent to him. The defendant's mother showed the telegram to plaintiff who, thinking that defendant was purchasing the property for him, sent $3,000 to defendant in North Providence. The trial justice found that no more than $3,000 was paid for the property. The defendant claimed at the trial that the figure $22,000 in the telegram was a mistake by the telegraph company. The trial justice said that this statement was a deliberate fabrication and that it was clear to him that " * * * defendant by sending the telegram, was attempting to set plaintiff up for a $22,000 demand for the property because he knew plaintiff was keeping in touch with the situation through his mother." The defendant's father recorded the deed in Italy on October 22, 1968, the date of the last check sent to defendant by plaintiff. It appears that because of government limitations on foreign exchange of currency, the $3,000 was sent in two installments of $1,500 each. The trial justice said that defendant had worked his scheme to perfection, noting that defendant " * * * not only had record title to the property which

he knew plaintiff wanted very desperately, but he also had plaintiff's $3,000.00 in hand and he was out of pocket no money in making the purchase."

The trial justice also found that after plaintiff had failed to settle the matter, he commenced this action in Rhode Island while defendant was still a citizen and subject to process here. At the time this action was commenced against him, defendant was a resident of this state, residing at 16 Whipple Court, North Providence. He went back to Italy in August, 1969.

In discussing plaintiff's prayer to have the court impose a constructive trust upon defendant and to require him to convey the property to plaintiff, the trial justice stated that in order to give rise to a constructive trust, actual or constructive fraud must be established and the evidence must be clear and convincing. He expressly found that the testimony of defendant was thoroughly unconvincing and completely unreliable. On the other hand, he found that the testimony of plaintiff and his corroborating witness was clear and convincing concerning the meeting and conversation between plaintiff and defendant in March, 1966.

He held that breach of a fiduciary duty amounts to constructive fraud; that if the March, 1966 conversation between plaintiff and defendant gives rise to a confidential relationship between them, the court may impose a constructive trust; and if there was an agency relationship between the parties, that in and of itself creates a confidential relationship.

The trial justice then said that it was clear to him that as a result of the March, 1966 meeting and conversation plaintiff reposed confidence in defendant; that plaintiff asked defendant to act on his behalf in acquiring the property involved for an agreed consideration; and that defendant agreed to act on plaintiff's behalf in this respect. The trial justice stated that it was also clear to him that

later defendant decided that he would act for himself, secure the land and attempt to secure an exorbitant price for the property; that defendant acquired his knowledge about the property in confidence from plaintiff and, therefore, there was a fiduciary relationship between the parties. He held that the Statute of Frauds has no application to a constructive trust even if land is involved.

He concluded that defendant had perpetrated a fraud upon plaintiff and, therefore, held the property in question as a constructive trustee for the benefit of plaintiff; that since the constructive trustee had no duties to perform other than conveying the property to the rightful owner, it was appropriate that defendant be ordered to convey the subject property to plaintiff; and that although the property was in Italy the Rhode Island court had jurisdiction over the person of defendant and, thus, had power to order a conveyance of the land, which was situated outside its territorial limits.

The trial justice ordered defendant to convey the property in question "by deed in form appropriate for recording in Italy," but he allowed defendant to reserve to himself a fee simple interest in the top floor of the building located on said premises. He also allowed defendant 60 days within which to make the conveyance and stated that if defendant did not abide by the court's order, plaintiff could apply to the court for the appointment of a commissioner to make the conveyance in the name of defendant. The trial justice continued in effect an injunction enjoining defendant from transferring the property to anyone except plaintiff. The trial justice rendered his decision on January 6, 1972, and a judgment incorporating the findings and orders of the trial justice was entered on January 28, 1972.

The defendant has briefed and argued this appeal under four main points. For convenience we shall treat it in like manner.

## I

Under point I defendant raises the question of whether the courts of this state have jurisdiction to compel an action relating to real property by a person no longer in this state. The defendant concedes that as a general principle of law, a court of equity may, under proper circumstances, order an individual over whom it has personal jurisdiction to execute a deed conveying an interest in real property situated outside the jurisdiction of the court. However, defendant argues that the aforesaid rule is of no effect in the present action because the trial justice found as a fact that "[d]efendant moved back to Italy in August 1969" and such situation having occurred, the Superior Court was without power to effect a conveyance of the land in question by defendant.

We fail to see how the fact that defendant moved back to Italy in August, 1969 is pertinent here. The sheriff's return shows that defendant was personally served a copy of the summons in this case in this state on April 5, 1969. The record indicates that this case was heard in the Superior Court on various days in September, 1971, that it was concluded on October 26, 1971, and that defendant was present at the trial and in fact appeared as a witness.

On this record we do not reach the precise question raised here by defendant. At the time of the trial defendant was a citizen of this state and defendant has pointed to no evidence showing that he ever ceased to be even though he was physically absent from the state for periods of time. At the time of the trial he was living here and the record is silent as to his whereabouts after that.

We agree with the trial justice's conclusion that the court had jurisdiction over the person of defendant and, therefore, had power to order a conveyance even though the land was situated outside the territorial limits of this

state. *See Fall* v. *Eastin*, 215 U. S. 1, 30 S. Ct. 3, 54 L.Ed. 65 (1909), cited by defendant, where the court said:

> "But this legislation does not affect the doctrine which we have expressed, which rests, as we have said, on the well-recognized principle that when the subject-matter of a suit in a court of equity is within another State or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but *indirectly* affected by the relief granted. In such case the decree is not of itself legal title, nor does it transfer the legal title. It must be executed by the party, and obedience is compelled by proceedings in the nature of contempt, attachment or sequestration. On the other hand, where the suit is strictly local, the subject-matter is specific property, and the relief when granted is such that it *must* act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the State where the subject-matter is situated." *Id.* at 11-12, 30 S. Ct. at 8, 54 L.Ed. at 70-71.

## II

The defendant next argues that the evidence presented by plaintiff and the facts found by the trial justice are not sufficient to entitle plaintiff to the relief awarded. As we pointed out above, the trial justice held that defendant held the property as constructive trustee for plaintiff and owed him a duty to convey the property to him. The defendant contends that while these findings may be correct, in a general sense, they do not, in the circumstances of this case, create any basis for relief for plaintiff.

The circumstances alluded to by defendant are the fact that the agreement involved in this case was made in Italy and concerned real estate there. He argues further that

whether there has been a transfer of an interest in land by operation of law and the nature of the interest transferred are determined by the law of the situs; that plaintiff has presented no evidence to establish what the law of Italy is in regard to his claim, that he has neither pleaded nor given defendant any notice of any intent to rely on the law of another jurisdiction, and that in view of all this the judgment should be vacated and the action dismissed.

We agree with defendant's statement that the law of the situs governs in determining the validity of a conveyance of an interest in land and the nature of the interest conveyed. *See* 11 Am. Jur. *Conflict of Laws* §36 (1937). But no claim is made that an interest, either legal or equitable, in the property in Italy was created by the agreement between the plaintiff and defendant in March of 1966, in Italy. Rather that agreement created a personal relationship between plaintiff and defendant of principal and agent whereby in return for a valid consideration, defendant would act in a fiduciary capacity to obtain the property in question for plaintiff. Thus, the March, 1966 agreement created personal duties between the parties which, while associated with or collateral to the property in Italy, were essentially personal in nature. This agreement and the relationship created by it are governed by the usual rules of contract. *See* 11 Am. Jur. §38 (1937) at 335, where the rule is stated as follows:

> "Those contracts or agreements directly concerning real estate or the title thereto should be carefully distinguished from those which, while associated with, or collateral to, the realty are in reality purely personal. Agreements of the latter nature will in all cases be governed by the usual rules of contracts, and will not be influenced at all by the lex rei sitae."

Having decided that the usual rules of contract govern here, we must next determine whether the contract law of Italy or the contract law of this country should be applied

in this case. All the facts in this case indicate that plaintiff and defendant entered into the agreement in Italy with a view to performance in the United States. That is, that defendant would negotiate and purchase the property for plaintiff from Anna Coppa DiMaio in this country. The purchase of the property by defendant for plaintiff was the fiduciary duty which defendant undertook. Since the parties contemplated performance in this country, our law governs and not that of Italy.[4] In the circumstances the trial justice was correct in not requiring evidence of the law of Italy.

On the view we take *Weston* v. *Stuckert*, 329 F.2d 681 (1st Cir. 1964) and *Hardy* v. *Hardy*, 250 F. Supp. 956 (D. D. C. 1966) are not apposite here. As we stated above, no claim is made that any interest in the property in question, legal or equitable, was created by the March, 1966 agreement. Nor did the finding of a constructive trust by the trial justice *per se* create an equitable interest in the property. The finding that a constructive trust exists creates an in personam obligation to convey only, and not an equitable interest in the subject land. Having jurisdiction over the person of defendant, and having found the existence of a constructive trust, the trial justice had the power to order him to convey the property to plaintiff, regardless of whether or not plaintiff, prior to the conveyance, had an equitable interest in the land by the law of the situs thereof.

---

[4]*See* Annot. 72 A.L.R. 250 (1931), where the rule is stated as follows: "It is a fundamental principle of conflict of laws that contracts are to be governed by the laws of the state or country in which they are made, unless made with a view to performance in another state or country, in which case they will be governed by the law of such state or country. This principle is as applicable to contracts of interstate or international carriage as to any other type of contract." *See also* 15A C.J.S. *Conflict of Laws* §11(3) at 439-41.

## III

The defendant next challenges the action of the trial justice denying his motion to strike certain testimony relating to events which occurred prior to March, 1968, or in the alternative to allow him further discovery. The plaintiff's complaint alleged in substance that the agreement made by plaintiff and defendant occurred in Italy "on or about March, 1968." The trial justice allowed testimony relating to happenings which occurred in 1966. The defendant objected to such testimony and subsequently moved to strike. The trial justice denied his motion to strike and granted plaintiff's motion to amend the complaint to conform to the evidence.

The defendant argues strenuously that the trial justice's action constituted reversible error. We have examined the transcript to determine whether there is any merit to the issues raised by defendant here. Finding none we conclude that a detailed discussion of defendant's argument would serve no useful purpose and would unduly prolong this opinion. The defendant has failed to persuade this court that he was in any way unlawfully prejudiced by the trial justice's action with respect to these issues and, therefore, we find no reversible error.

## IV

The final argument made by defendant is that the trial justice committed reversible error in finding that defendant was a constructive trustee owing an obligation to convey the property to plaintiff. We do not agree.

As we have pointed out above the trial justice made express findings that plaintiff reposed confidence in defendant; that for an agreed consideration defendant agreed to act for and on behalf of plaintiff; that there was a fiduciary relationship between the parties; and that defendant perpetrated a fraud on plaintiff. These findings are supported by credible evidence.

On the basis of these findings the trial justice correctly found that a constructive trust arose by clear and convincing evidence. *Desnoyers* v. *Metropolitan Life Ins. Co.*, 108 R. I. 100, 272 A.2d 683 (1971). The March, 1966 conversation created a confidential relationship between plaintiff and defendant, *Tyler* v. *Tyler*, 54 R. I. 254, 172 A. 820 (1934), as did the agency relationship, *Seekins* v. *King*, 60 R. I. 112, 197 A. 213 (1938); *Hoppin* v. *Tobey*, 9 R. I. 42 (1868). Breach of a fiduciary duty amounts to constructive fraud. As the court said in *State Lumber Co.* v. *Cuddigan*, 51 R. I. 69, 71-72, 150 A. 760, 761 (1930):

> "The familiar case of a constructive trust based on constructive fraud is found where 'One who occupies a fiduciary or confidential relation to another in respect to business or property, and who by the use of the knowledge he obtains through that relation, or by the betrayal of the confidence reposed in him under it, acquires a title or interest in the subject-matter of the transaction antagonistic to that of his correlate.' "

The defendant's contentions that this case was a mere refusal to effect a parol trust and that the fraudulent intent was an afterthought are not supported by the evidence. But even if we assume that the fraudulent intent was an afterthought, the mere existence of a fiduciary and/or agency relationship is sufficient to sustain the finding of a constructive trust. That constructive trusts are not within the Statute of Frauds, even though land is involved, is well established. *Lawrence* v. *Andrews*, 84 R. I. 133, 122 A.2d 132 (1956); *State Lumber Co.* v. *Cuddigan, supra.* Restatement (Second) *Agency* §403 at 246 (1958).

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, the injunction heretofore entered is continued in effect, and the cause is remanded to the Superior Court for further proceedings.

Motion to reargue denied.

Mr. Justice Joslin did not participate.

Joseph G. Miller, Edwin D. D'Agostino, for plaintiff.

John Cosentino, Swan, Keeney, Jenckes & Asquith, Conrad M. Cutcliffe, Edward W. Moses, for defendant.