Elizabeth G. SIMPSON et al.

v.

Kathleen E. DAILEY.

No. 83–111–Appeal.

Supreme Court of Rhode Island.

July 15, 1985.

James H. Reilly, Kelly Kelleher & Reilly, Providence, for plaintiff.

Richard L. Patz, Providence, for defendant.

## OPINION

SHEA, Justice.

This is an equity action in which the defendant, Kathleen Dailey (Kathleen), is before us on her appeal from a judgment entered after a Superior Court jury returned a verdict in favor of the plaintiffs, Elizabeth Simpson (Elizabeth) and her four sons. In her complaint Elizabeth sought the imposition of a constructive trust upon the proceeds received by Kathleen from an annuity contract purchased by Terrence Simpson (Terrence), deceased, husband of Elizabeth and brother of Kathleen. In her appeal Kathleen claims that the trial justice erred in instructing the jury, in denying her motion for a directed verdict, and in making certain evidentiary rulings. We disagree and we affirm the judgment entered below.

The record reveals that in January 1976, Kathleen and Terrence purchased identical annuity contracts for $21,000 each. The funds used to purchase the annuities were derived from pecuniary gifts of equal amounts from their mother, Grace Simpson, who had inherited the sum of $42,000 from relatives in Ireland. At the time the annuity contracts were purchased, Kathleen was experiencing marital difficulties. To be certain that her children would be protected in the event of her death, she named Terrence, her brother, as primary beneficiary rather than her husband. At trial Kathleen testified that Terrence had agreed to turn over "every single penny" to her children if she predeceased him. She had every confidence that he would have done so.

Elizabeth's testimony was in substantial accord with Kathleen's on this point. She said that Kathleen wanted Terrence to handle "all [the] money" because of her domestic difficulties and because "she knew he would take care of the kids * * * because they were too young." She stated that Kathleen and Terrence loved, trusted, and had confidence in each other. She testified, however, that her husband decided to designate Kathleen as primary beneficiary and herself as contingent beneficiary as part of a reciprocal agreement based on the understanding that if Terrence predeceased Kathleen, the latter would apply the proceeds of Terrence's contract for the benefit of Elizabeth and her children. She explained that

"he did it because she [Kathleen] put his name on hers and so he did the same thing, that she [Kathleen] would help, that the moneys would go if he should die, would come to me and my children, his children. And he said, 'Don't worry about it, it's going to be all right.'"

But in breach thereof, Elizabeth contends, Kathleen repudiated the oral understanding and claimed the proceeds as her own.

Kathleen's testimony differed from that of her sister-in-law. She insisted that the arrangement was that if Terrence were to die first, she was to keep the proceeds of the annuity. She said that Terrence had agreed to this arrangement. Her explanation was that she had taken care of their mother during her declining years and her illness and that her mother had wanted to give her the entire $42,000 inheritance. She said that she had discussed the situation with her brother and rather than cause trouble between them, they had decided to purchase the annuity contracts as the best solution.

At the close of plaintiffs' case, Kathleen's motion for a directed verdict was denied. The motion was not renewed at the close of all the evidence.

In submitting the case to the jury, the trial justice denied Kathleen's request for instructions that no fiduciary relationship arises when a defendant has no position of superiority or dominance over the other party and that clear and unambiguous language in a contract is controlling in regard to the intent of the parties. Instead, he instructed the jury on the law of constructive or resulting trusts. In accordance with the fiduciary-relationship rule, he also instructed that a finding that a fiduciary relationship existed between Terrence and Kathleen would require a verdict for plaintiffs regardless of any evidence relating to the care and maintenance of the mother by Kathleen.

Kathleen contends, in substance, that no fiduciary relationship existed between the parties; that to prove such a relationship requires a showing of dominance of one party over the other; and that the deceased, rather than she, was the dominant party to the creation of the annuities. She buttressed this argument with evidence at trial that she totally relied on her brother's judgment in matters relating to the purchase of stocks and annuities. While recognizing that this court has not specifically addressed the "dominant party" element in previous cases, Kathleen nonetheless argues that such a view is implicitly supported in this jurisdiction. We disagree.

 Equity resorts to the remedial device of a constructive trust to accomplish justice. The underlying principle of a constructive trust is the equitable prevention of unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained (1) by fraud, (2) in violation of a fiduciary or confidential relationship, or (3) by testamentary devise or intestate succession in exchange for a promise to hold in trust. *Desnoyers v. Metropolitan Life Insurance Co.*, 108 R.I. 100, 272 A.2d 683 (1971); *State Lumber Co. v. Cuddigan*, 51 R.I. 69, 150 A. 760 (1930). The device of a constructive trust can be employed independently of the intent of the parties. In fact, a constructive trust is a relationship imposed by operation of law as a remedy to redress a wrong or prevent an unjust enrichment. It is not a trust in which the trustee is to have duties of administration lasting for a period of time but rather a passive, temporary trust in which the trustee's sole duty is to transfer the title and possession of the property to the beneficiary. *See Matarese v. Calise*, 111 R.I. 551, 305 A.2d 112 (1973). Constructive trusts are not within the statute of frauds. *Id.* at 564, 305 A.2d at 120.

 A constructive trust will be imposed upon property that is obtained in violation of a fiduciary duty. *Id.* at 564, 305 A.2d at 119. A family relationship, of itself, does not create a fiduciary relationship, although further facts may show one. *Tyler v. Tyler*, 54 R.I. 254, 172 A. 820 (1934). This court has recognized a fiduciary or confidential relationship between a brother and a sister in circumstances in which a sister conveyed property to the brother without consideration upon his representation that there were certain liens on

the property to be taken care of. *Cahill v. Antonelli*, 120 R.I. 879, 390 A.2d 936 (1978).

In upholding the trial justice's determination in that case that the brother maintained a relationship of trust and confidence with his sister, this court relied on evidence showing that the sister had always looked to her brother for advice, that the brother had promised but failed to reconvey the property, and that an agency relationship was created when the sister agreed to let the brother act on her behalf to clear up certain liens. *Id.* at 883, 390 A.2d at 939.

▮ There are no hard and fast rules about when a confidential relationship will be found. The court may consider a variety of factors, including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow the other's guidance in complicated transactions. Bogert, *Trusts and Trustees* § 482 at 280–336 (2d rev. ed. 1978). There is no requirement in this jurisdiction that a defendant must occupy a position of dominance over a plaintiff.

▮ In this case there was ample evidence that Kathleen shared a close familial relationship with her brother. She admitted at trial that she relied on him a great deal for advice and counseling. On more than one occasion she followed his guidance with respect to investing certain other of her funds in stock purchases. She further attested to her brother's complete trust and confidence in her. The confidence that the brother reposed in his sister had its origin in their relationship, and that relation was a moving cause in influencing the brother to name his sister as primary beneficiary to ensure the future well-being of his family.

▮ In view of the above-cited criteria, we are satisfied that the jury could find the existence of a fiduciary relationship and,

hence, a breach thereof. It follows that Kathleen should not be permitted to claim the proceeds to her unjust enrichment. Consequently, we find no error in the trial justice's instructions. Nor was there error in his cautionary charge that the jury should not consider any evidence of the extent of Kathleen's care and maintenance of her mother since that evidence was irrelevant to the issue of whether a constructive trust should be imposed.

Furthermore, there was no error in the trial justice's refusal to instruct on the principles of contract law or his denial of an objection and motion to strike the introduction of evidence regarding the annuity contracts. Kathleen contends that the trial court's refusal to so instruct was prejudicial in that it precluded the jury from considering the issue of intent of the parties. She further argues that once the contracts were in evidence, it was a violation of the statute of frauds, the parol-evidence rule, and the best-evidence rule to permit Elizabeth's testimony regarding the agreement between Kathleen and her brother with respect to the proceeds.

▮ Since a constructive trust, which is based on unjust enrichment, is construed from the circumstances surrounding the transaction, parol evidence of the agreement is admissible to prove unjust enrichment. The proving of the contract is incidental. Thus, where the plaintiff is not attempting to establish, challenge, or modify the terms of the contract, neither the parol-evidence rule nor the best-evidence rule is applicable. *See Inleasing Corp. v. Jessup*, R.I., 475 A.2d 989 (1984); *Proffitt v. Ricci*, R.I., 463 A.2d 514 (1983); *Lisi v. Marra*, R.I., 424 A.2d 1052 (1981).

▮ So too does the defendant's directed-verdict argument fail. The failure to renew a motion for directed verdict at the close of all the evidence forecloses appellate review of a denial of a motion for directed verdict. In this case, Kathleen's counsel moved for a directed verdict at the close of the plaintiffs' case but failed to

renew the motion at the close of all the evidence. Thus, this issue is not properly before us. *See Hamrick v. Yellow Cab Co. of Providence,* 111 R.I. 515, 304 A.2d 666 (1973); *Young v. Coca-Cola Bottling Co.,* 109 R.I. 458, 287 A.2d 345 (1972); 1 Kent *R.I.Civ.Prac.* § 50.1 (1969). We would observe, nonetheless, that the denial of the motion by the trial justice at the close of the plaintiffs' case was ultimately correct.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.

KELLEHER, J., did not participate.