[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiff Belinda Amaral (Amaral) has brought this cause of action against Defendants Earl L. Beig and Regina Beig (Beigs) asserting various theories that essentially seek to define and establish the parties' respective rights in real property located at 19 Horizon Drive, Tiverton, Rhode Island. Sitting without a jury, this Court heard testimony and received evidence relative to the parties' rights in the property.
Belinda Amaral is the mother of Defendant Regina Beig. Earl Beig and Regina Beig are husband and wife. Prior to Amaral's second marriage, the Beigs resided in a separate apartment of Amaral's home in Fall River, Massachusetts. Although Amaral moved into her new husband's home after the marriage, she continued to maintain a healthy relationship with the Beigs and their children.
Early in August 1988, Amaral's husband passed away. Regina Beig thereafter provided care and companionship for her mother over an extended period of time. During this period there were numerous discussions concerning the parties living together. After considering various alternatives, the parties decided to build a new home on a vacant lot on Horizon Drive in Tiverton.
In accord with their intent to live together, the parties reached a loosely-defined oral understanding relative to their obligations. The essence of their agreement provided that Amaral initially would advance most of the funds necessary for land acquisition and construction. The agreement also required the Beigs to sell their home in Fall River, Massachusetts and contribute the proceeds towards the Horizon Drive property. It was further understood that Amaral and the Beigs would each share one-half ownership in the home.
In December 1988 the property was purchased and held by the parties as tenants in common. The parties thereafter reconveyed the property to themselves as joint tenants with rights of survivorship. An architect and a builder were retained and construction began. Although the parties had not established a fixed budget for the construction project, the final cost exceeded their original expectations.
Construction was eventually completed and the parties took occupancy on April 19, 1990. By July 1990, the parties' relationship had deteriorated and Amaral moved out of the home. After several weeks, Amaral returned to the home and the Beigs moved out. The parties have remained separated ever since.
Amaral has asserted several different theories of recovery including breach of contract, breach of fiduciary duty, and unjust enrichment. She ultimately seeks reformation of the deed to reflect that she is the sole owner of the Horizon Drive property subject only to lien in favor of the Beigs equal to their financial contribution. The Beigs, conversely, submit that the only way to properly resolve this dispute is through a sale and partition of the property with an equitable distribution of the proceeds.
A significant portion of Amaral's trial memorandum is devoted to establishing the existence of a fiduciary relationship between herself and the Beigs. The existence of a fiduciary relationship, Amaral argues, entitles her to a constructive trust on the Horizon Drive property. Imposition of a constructive trust, however, is appropriate only in certain limited circumstances.
Most cases involving the establishment of a constructive trust are based on a theory of constructive fraud or breach of fiduciary duty. Matarese v. Calise, 305 A.2d 112, 119 (R.I. 1973). A breach of fiduciary duty sufficient to support a constructive trust is ordinarily found in cases where a person holding a fiduciary or confidential relationship with another acquires an interest in the other's business or property through either an abuse of the relationship or a betrayal of confidence.Id. Proof of a fraudulent intent, however, is not necessary since breach of a fiduciary duty amounts to constructive fraud.
Turning now to the case at bar, a thorough review of the record fails to convince this Court that a fiduciary duty or confidential relationship ever existed between Amaral and the Beigs. The evidence clearly indicates that Amaral, although elderly, was fully cognizant of and satisfied with the parties' contractual understanding relative to construction and cohabitation. Indeed, the record reveals that construction was completed and the parties eventually moved into the house where they lived amicably for approximately two months. Amaral never voiced any objection or dissatisfaction over her relationship with the Beigs or their involvement in the construction. Only after the relationship had deteriorated and the Beigs permanently moved out did Amaral become dissatisfied with their agreement. That the Beigs primarily supervised design and construction, without more, is insufficient to support the existence of a fiduciary duty or confidential relationship. Since the facts of this case simply cannot support Amaral's contention that a fiduciary or confidential relationship existed, her demand for the imposition of a constructive trust must fail.
Given that a constructive trust is not an appropriate remedy, proper resolution of this case turns primarily on the parties' agreement and the extent of their respective contributions. It is virtually undisputed that the parties originally agreed to construct a house, with each contributing one-half of the total cost. Since the Beigs possessed limited financial resources, they agreed that Amaral would advance the funds and the Beigs would thereafter sell their home and contribute the proceeds. Because of the sudden deterioration of the relationship, however, the Beigs never sold their home. Amaral continues to occupy the expansive four bedroom home on Horizon Drive while the Beigs now reside in their home in Fall River, Massachusetts. Both parties have made significant contributions to the Horizon Drive property and they currently hold title as joint tenants with rights of survivorship.
Given the current complexities of the parties' relationship and the unlikely possibility of reconciliation, this Court is convinced that an order of partition and sale is the only way to fairly, equitably, and finally resolve this dispute. The parties have stipulated and agreed that the total cost of the Horizon Drive property equals $410,000. The Beigs and the Amarals, therefore, are each responsible for $205,000. It is undisputed that the Beigs' actual cash contribution totaled $27,000. The parties further agree that the Beigs contributed to the project a gift of $50,000 from Amaral for a total contribution of $77,000.
The Beigs concede that they do owe Amaral some compensation since their total contribution of cash and gifts was less than their half of the total cost. The amount that Amaral is entitled to, however, depends on the extent of her gift to the Beigs relative to the land's purchase price. The Beigs contend that Amaral gifted to Regina the land's entire $95,000 purchase price. Amaral, however, contends that she gifted to the Beigs only one-half of land's purchase price or $47,500.
Regina Beig testified at trial regarding Amaral's purchase of the land and the alleged gift. She testified that a conversation between her and Amaral occurred while the house was under construction, long after Amaral had purchased the land. According to the testimony, this conversation occurred in the context of a discussion concerning rather substantial gifts Amaral had recently given to her son and two stepchildren. Although the word "gift" was never specifically used, Regina testified that during the conversation Amaral indicated that the land belonged to her. Scott Beig, Amaral's grandson, further testified that he was present during the conversation and heard Amaral state that the land belonged to his mother. Amaral, on the contrary, admits that she gifted to the Beigs only their $47,500 share of the land's purchase price.
In resolving whether Amaral intended to gift the land's entire purchase price to the Beigs, this Court is not unmindful that both parties stand in a position to benefit from this contradictory testimony. To determine the extent of this disputed gift, it is necessary to consider the testimony in light of the facts and circumstances surrounding the parties' personal and contractual relationship. It is uncontroverted that the parties entered into an oral understanding requiring each to contribute equally to the construction of a house. In December of 1988 Amaral purchased the land for $95,000 and held the title in common tenancy with the Beigs. Thereafter the parties reconveyed the property to each other as joint tenants with rights of survivorship. Not until after the demise of their relationship did the dispute concerning a gift of the land arise.
To support their contention that Amaral gifted the land's total purchase price, the Beigs rely primarily on the testimony of Regina and Scott Beig. While this Court finds that Regina and Scott were credible witnesses, the substance of their testimony regarding the conversation between Regina and Amaral nevertheless fails to establish that Amaral intended a gift of the entire $95,000 purchase price. Regina's testimony was rather nonspecific on the issue of whether a gift was actually intended. When Regina mentioned concerns to Amaral about cash gifts Amaral had given to other siblings, Amaral merely responded that the property belonged to Regina. Scott Beig essentially confirmed his mother's testimony relative to the conversation with Amaral. In light of the parties' original agreement and that title to the property was held in a joint tenancy, however, Amaral's statement that the property belonged to Regina more likely reflected her understanding that the Beigs would receive the property at her death rather than her intent to make a gift of the land's purchase price.
Prior to the discussion between Amaral and Regina concerning the land, the Beigs were obligated to compensate Amaral $47,500 for one-half of the purchase price. Amaral's admission that she gifted to the Beigs their $47,500 share of the purchase price is consistent with both common sense and the factual elements of the case. Moreover, the testimony of Regina and Scott Beig simply fails to convince this Court that Amaral otherwise intended a gift of the entire $95,000 purchase price. After a thorough review of the entire record and careful assessment of all testimony, this Court finds that Amaral gifted to the Beigs only $47,500 of the land's total $95,000 purchase price.
It is undisputed that the original oral understanding required the parties to provide equal contribution towards the cost of construction. They have stipulated and agreed that the total cost of construction was $410,000, resulting in a $205,000 obligation for each party. It is further undisputed that the Beigs contributed $27,000 of their own cash to the project, plus an additional $50,000 acquired by gift from Amaral, for a total of $77,000. Adding in Amaral's gift of one-half of the land's purchase price at $47,500, the Beigs' total contribution towards the cost of construction was $124,500. Since their total obligation for construction costs was $205,000, this Court finds that the Beigs are deficient in the amount of $80,500.
Amaral's argument that this Court should not consider her gifts to the Beigs as part of their total contribution is entirely without merit. That a significant portion of the Beigs' contribution was comprised of gifts from Amaral is irrelevant. Amaral freely chose to make substantial unconditional gifts to the Beigs, and an breakdown in their relationship does not otherwise entitle her to unilateral revocation. A review of the record satisfies this Court that the Beigs are properly entitled to credit for the gifts they received from Amaral.
Amaral's demand for a constructive trust based on a breach of fiduciary duty or confidential relationship theory was not supported by the record. The evidence and testimony clearly indicates that she entered into the oral agreement with the Beigs possessing full knowledge and understanding of its terms and implementation. There is no evidence that the Beigs assumed or acted in a fiduciary capacity. Given the demise of their relationship, this Court finds that the only way to properly resolve this dispute is to order a partition and sale of the property. This Court finds that the total cost of construction was $410,000, resulting in a $205,000 obligation for each party. Totaling the contributions of cash and gifts, this Court further finds that the Beigs' total contribution equals $124,500, resulting in a deficiency of $80,500. Upon sale of the Horizon Drive property, the proceeds shall first be applied to cover all selling costs. After satisfying all selling costs, the first $80,500 shall be paid directly to Amaral to compensate her for the Beigs' deficiency. Of the remaining proceeds, one-half shall be paid to Amaral and the other one-half shall be paid to the Beigs.
Counsel shall prepare an appropriate judgment for entry.