[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO MODIFY CUSTODY AND CHILD SUPPORT (NO. 129); MOTION FOR CONTEMPT (NO. 130); MOTION FOR ORDER RE: COUNSEL FEES (NO. 131); MOTION FOR ORDER RE: RETROACTIVITY (NO. 132); MOTION FOR ORDER (NO. 138); AND MOTION FOR PAYMENT OF FEES (NO. 141)
I. STATEMENT OF THE CASE
Pursuant to Connecticut General Statutes sections 46b-56 and 46b-86
(a)[1] and Connecticut Practice Book section 25-27,[2] the court heard evidence concerning the following motions: the defendant husband's motion to modify custody and child support dated July 23, 2001;[3] the plaintiff wife's motion for contempt dated August 15, 2001; plaintiff's motion for order re: counsel fees dated August 17, 2001; plaintiff's motion for order re: retroactivity dated September 13, 2001; counsel for the minor children's motion for order regarding attorney's fees dated November 26, 2001; and guardian ad litem's motion for payment of fees dated December 10, 2001.
II PROCEDURAL HISTORY
On July 13, 1995 the trial court, Petroni, J., entered an order of dissolving the parties' marriage, incorporating into his judgment a written separation agreement. That judgment did not preclude modification. The court gave the parents joint legal custody of their three children: Brian born May 22, 1982; Kathryn born March 6, 1985; and Stephen born July 16, 1990. The Children's primary residence was with their mother. The court accepted a detailed visitation and holiday schedule.
The issues before this court are the latest in a series of financial battles waged by these individuals during the past six years. In order to assess the claims of the respective litigants properly, the court CT Page 2710 considered the history of this case.
The plaintiff wife filed for dissolution of the marriage on June 29, 1994. Almost immediately the parties began their long conflict about financial issues.[4] A secondary area of contention was the question of child custody and visitation.[5]
The couple remained combative after their divorce. Throughout the years these litigants filed motions concerning custody, visitation, financial awards and contempt.[6] Some of these motions required court referral to the court's family relations office for evaluation and mediation.[7]
The present dispute involves custody of the couple's minor daughter, Kathryn. In his July 23, 2001, motion to modify custody and child support the defendant indicated that this sixteen-year-old child had expressed a strong desire to live with her father in Texas. In addition to requesting physical custody, the defendant requested "that child support be modified accordingly." After appointing counsel for all children and a guardian ad litem for Kathryn, on August 20, 2001, the trial court, Brennan, J., granted the defendant's motion and ordered a transfer of physical custody to the defendant. The court further ordered that the plaintiff would have unlimited visitation with her daughter upon reasonable notification. The court specified that Kathryn be allowed to visit relatives in Connecticut during any time that the defendant visited Connecticut.
Although the trial court did not enter any financial orders, the court did indicate that any such awards would be retroactive to September 20, 2001. The instant hearing followed.
III STATEMENT OF FACTS
Examination of the court file and evidence introduced at the court hearing reveals the following. When the marriage of the parties was dissolved in July 1994, the judgment included a stipulation by the parties that the plaintiff provide unallocated alimony and child support in the amount of five thousand ($5,000) dollars per month until April 6, 2002. Thereafter, the defendant would pay the plaintiff the sum of four thousand ($4,000) dollars per month until "fourteen years from the date of the dissolution of the marriage." Additionally, the plaintiff would receive a percentage of the defendant's annual bonus. At the time of their divorce, the plaintiff was unemployed.
The plaintiff subsequently secured a position as a teacher. Pursuant to the defendant's motion, the original financial orders were modified on January 31, 2000. In accordance with an agreement by the parties, the trial court, Cutsumpas, J., ordered that the unallocated alimony and CT Page 2711 child support be reduced to forty-five hundred ($4,500) dollars per month until April, 2002. At that time the amount. would be further reduced to thirty-five hundred ($3,500) dollars per month. The plaintiff relinquished any claim to that part of the defendant's future income that derived from bonuses. Both parties agreed to assume responsibility for a portion of the college expenses incurred by their oldest child, Brian. Finally, the parties agreed that in the future "[nil either party shall be required to exchange financial information with the other party."
At the time of the January 2000 modification, the defendant was employed at the Akzo-Nobel Chemical Corporation in Houston, Texas. He had a net weekly salary of $2,390 and listed weekly expenses of $2,429. His assets totaled $282,165; his liabilities were minimal. At that same hearing, the plaintiff had a net weekly income of $1,274. This amount included unallocated alimony and child support. Her weekly expenses were $1,824 and her assets were $87,200. The plaintiff also had minimal liabilities.
At the time of the hearing on the present motion to modify, the defendant was still employed at the Akzo-Nobel Chemical Corporation. He had a net weekly salary of $2,095 and listed weekly expenses of $3,293. His assets totaled $325,400. The plaintiff's net weekly income and expenses were both approximately $1,312. Her assets totaled $139,731.
There is evidence that during the last year the defendant's salary has been frozen. There is also evidence that he may not be entitled to bonuses in the future. Nevertheless, based upon the financial affidavits presented, the court finds that the defendant has a net weekly salary of $2,095. That salary is approximately 88% of the salary available when the financial orders were last modified.[8] The plaintiff's net income has increased by approximately 3%.
Since the date of the last modification, while the defendant's expenses have increased by 35%, the plaintiff's have been reduced by 28%. The defendant has sold back vacation time in order to pay for his household expenses.
It is difficult to determine that portion of the defendant's increased expenditures that this court can attribute specifically to Kathryn's presence in Texas. The defendant has higher clothing and telephone bills. Unfortunately, neither of these expenses was documented. Additionally, there are counseling expenses but insurance covers the bulk of these costs. The defendant has spent money for visits to Connecticut but the added cost, if any, was caused by the fact the Kathryn's stepmother and stepbrother accompanied her and her father during the Connecticut trips.[9] The defendant has also incurred expenses relating to CT Page 2712 both standardized testing classes and Kathryn's visits to various college campuses in anticipation of her post-secondary education.
As a result of the August court order, the plaintiff has also experienced some expenses relating to Kathryn, most significantly the cost of one trip to Houston. Her exact expenditures are not documented.
Although both parents attended parenting education classes, these parties continue to quarrel about every aspect of their children's lives. Their communication is either by e-mail or through their children. For example, Kathryn requires therapy and counseling, yet her parents have failed to coordinate medical treatment and insurance. They do not communicate about the professionals that Kathryn has visited. They cannot agree to a system whereby the insurance company can expeditiously process all medical claims.
Furthermore, access to the children remains a battlefield The dissolution decree and subsequent visitation agreement required that the defendant arrange his visits sixty days in advance. He did not. The defendant's summer visits with his children should not have been for consecutive weeks. They were.
Pursuant to court order, the defendant must arrange all visitation-related transportation in a manner convenient to the plaintiff. The plaintiff's preference unfortunately involves flights that increased travel time for the children.[10] The defendant is equally inflexible. For example, although the plaintiff was entitled to have the children for Christmas Eve, the defendant arranged flight plans such that the children spend only a few short hours with their mother before traveling to the defendant's vacation home in the Poconos. Additionally, he fails to provide the plaintiff with sufficient notice of his visitation plans.
An added problem with visitation involves cost. Pursuant to the original dissolution decree, the defendant was responsible for all costs associated with his access to the children. He did not wish to pay for transportation from the plaintiff's home to the airport. The situation became so acrimonious that the plaintiff required payment in advance before she would drive the children to the airport.[11]
Kathryn's future residence is another area of contention. The court finds that from virtually the moment the child moved to Houston, she expressed a strong desire to return to Connecticut.[12] Her parents cannot agree about the circumstances that would allow her to return to Connecticut. Both, however, are reasonably sure that at a minimum Kathryn will return to Connecticut for the summer. She has expressed a desire to CT Page 2713 work at Fairfield Beach as a lifeguard.
Finally, both parents refuse to speak with each other. As a result, the children's access to the non-custodial parent is significantly impaired.
IV LEGAL ANALYSIS
A. Motion to Modify Alimony and Child Support Connecticut General Statutes46b-86 (a) provides in relevant part:
 . . . [A]ny final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial.
The statutory prerequisites for modification of alimony and child support are clear. There must be a substantial change in circumstances. The defendant, the moving party, has the burden of "clearly and definitely" demonstrating that substantial change of circumstances.Richard v. Richard, 23 Conn. App. 58, 61, 579 A.2d 110 (1990). "That party must demonstrate that continued operation of the original order would be unfair or improper." Harlan v. Harlan, 5 Conn. App. 355, 357,496 A.2d 129 (1985).
Most of the testimony offered by the parties concerned the underlying reason for the transfer of physical custody. That issue, decided in August 2001, was not before this court. Custody and visitation had been established. The sole remaining issue in that motion was the question of modification of unallocated alimony and child support.
Although there is a rebuttable presumption that the income deviation in the present case is not substantial,[13] there has been a change in primary residence of one child. As a result there has been a change in household expenditures. CT Page 2714
The defendant's household expenses have increased since the last motion to modify. The defendant has established an increase in telephone expenses, automobile insurance and daily expenses. These expenses are in addition to the cost of transporting Kathryn to Connecticut to visit her mother.[14] However, because Kathryn will return to Connecticut during the summer in order to work as a lifeguard, and might possibly remain in this state permanently after the summer, the plaintiff is required to maintain a room for the child. Her expenses have not diminished substantially.
There is no question that there has been a "substantial change of circumstances." Kathryn has moved. The question is whether the court should apply statutorily prescribed support payments in this case. There is no reason not to apply those guidelines.
The only remaining question is whether there is a basis for deviation from the guidelines. Connecticut General Statutes section 46b-215a-3 (a) of the Regulations of Connecticut State Agencies[15] establishes both standard child support payment guidelines as well as general criteria for deviation.
"Both the `substantial change of circumstances' and the `substantial deviation from child support guidelines' provision establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole . . .Turner v. Turner, 219 Conn. 703, 718-19, 595 A.2d 297 (1991).
The issue is whether the new custody and access schedule substantially reduces, or substantially increases, either party's expenses for their children. The defendant's household expenses have increased since the last motion to modify. Specifically relating to Kathryn, he established an increase in telephone expenses, automobile travel, insurance, clothing and grooming expenses. These expenses are in addition to the cost of transporting Kathryn to Connecticut to visit her mother. However, the plaintiff pointed to the fact that she must maintain separate bedrooms for each of her children. She also has large utility and other household related bills. The court concludes that both of the litigant's expenses would be true under the prior visitation schedule.[16]
The only truly different expense is that the plaintiff must incur CT Page 2715 significant travel expenses if she wishes to visit her daughter in Houston.[17] Additionally, she has significantly higher telephone bills.
The August order provided liberal access to the child after her relocation. In light of the fact that Kathryn will return to the plaintiff's residence in May or June, this access is critical and encouraged. It is certainly in the best interests of both minor children that a strong familial relationship exists.
The court has considered the comparative financial positions of each of these parties. The court must also consider the best interests of both children. Except for plaintiff's travel costs, neither party can establish any basis for total deviation from the presumptively correct support guidelines. Given the relative economic condition of these litigants, reliance on the guidelines would not be inequitable. Therefore, this court will rely primarily on those to establish the child support order that should have been in effect since the date of the transfer of custody. However, the court will allow some deviation for the additional cost of transportation that the plaintiff will incur should she exercise her visitation rights.
This court has taken into consideration the present child support guidelines. It has anticipated some travel-related expenses for the plaintiff. It is also aware of the fact the plaintiff must maintain a permanent residence for the two children in anticipation of Kathryn's return to Connecticut in June 2002.
The defendant's motion to modify support is further granted as follows. The present amount of unallocated alimony and child support shall be reduced from $4,500 per month to $3,800 (three thousand, eight hundred dollars) per month, beginning September 6, 2001. The amount of unallocated alimony and child support shall be further reduced to $3,000 (three thousand dollars) beginning April 6, 2002.
The visitation schedule ordered in August 2001 as well as the holiday and vacation schedule contained in the 1995 separation agreement remain in effect.
If Kathryn returns to Connecticut for the summer of 2002, the amount of unallocated child support and alimony shall return to the August 2001 level on June 6, 2002.
B. Motion for Order re: Retroactivity
In the original order of transfer of custody the trial court, Brennan, CT Page 2716 J., ordered that the child support order would be retroactive to August 20, 2001. The court had initially scheduled a hearing on all financial matters for September 2001. Unfortunately, due to contested discovery matters, a hearing on the ultimate financial orders was held in abeyance. The court notes that a significant portion of the controversy involved the plaintiff's desire for a commission to depose the defendant's Texas employer.
"Retroactive modifications of support orders are ordinarily impermissible." Favrow v. Vargas, 231 Conn. 1, 40, 647 A.2d 731 (1994); Connecticut General Statutes section 46b-86 (a). However, in the present case the defendant had filed the requisite motion for modification and judicial proceedings had begun. Furthermore, there had already been a judicial order indicating the effective date of any court order.
Plaintiff was aware in August of 2001 that any court orders regarding child support could be applied retroactively. Although application of the child support guidelines reduced the plaintiff's monthly income, the purpose of child support is maintenance of the child, not equalization of income.
Neither party has presented sufficient evidence to challenge this court order. If this court allows a sufficient period for repayment, enforcement of the order would not be inequitable. The plaintiff's request for an order to eliminate retroactive application of this court order must therefore be denied.
The court finds that the defendant has paid the plaintiff $4,200 more than required by the modified child support order. The plaintiff is ordered to pay the defendant the amount of $4,200 at a rate of $100 per month until the arrearage has been eliminated.
C. Motion for Contempt
Pursuant to Connecticut Practice Book Section 25-27, the plaintiff filed a motion for contempt. Citing provisions from the dissolution decree and subsequent agreements to establish the existence of court orders, the plaintiff has alleged:
 (1) the defendant failed to advise her of the "exact location of the children when the children visited the defendant;
(2) the defendant instructed the children not to contact the plaintiff; CT Page 2717
 (3) the defendant impeded her full and free access to the children;
 (4) the defendant failed to provide proof of his life insurance;
 (5) the defendant failed to provide reimbursement for uninsured medical expenses;
 (6) the defendant failed to provide the plaintiff with sixty days' notice of his intended visitation;
 (7) the defendant failed to pay for all visitation related costs; and,
 (8) the defendant failed to arrange transportation in a manner convenient to the plaintiff.
Connecticut procedure authorizes motions for contempt, one of the few vehicles available to enforce compliance with court orders. The burden of establishing a prima facie showing of contempt, in this case the willful disobedience of a court order, falls upon the plaintiff.
In the present action, the plaintiff has established the existence of the court orders she now relies upon. Indeed, in the long history of this case, there are a myriad of court orders directed at the plaintiff and the defendant both.
Viewing the plaintiff's evidence in a generous light, the court must acknowledge that the she has established that the defendant failed to inform the plaintiff of the exact location of the children at all times. Furthermore, the defendant has not provided the required sixty days' notice of his intended visitation. However, the specific violations are either remote in time or minimal. The plaintiff could not provide specific dates to support her allegations.
In all other areas, the plaintiff's proof has failed. She tried to prove that the defendant did not pay for all transportation related expenses. Although the defendant was reluctant to do so, the plaintiff's threat to withhold transportation forced his compliance. She also attempted to establish that the defendant impeded her access to the children. When with their father, both minor children call their mother regularly.[18] Furthermore, the defendant has provided proof of his life insurance. He has attempted to pay all unreimbursed medical expenses. The evidence establishes that all medical providers have been paid in full. Finally, he has attempted to arrange transportation for CT Page 2718 visitation that is convenient for the plaintiff.
The plaintiff has proven the existence of the two relevant factors, an order and the defendant's failure to comply strictly with the court order. Thus the contemptor, this defendant, must establish that he was unable to comply with the court order. Eldridge v. Eldridge, 244 Conn. 523,710 A.2d 757 (1998). Recognizing the broad equitable powers of this court, "a finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Citations omitted; internal quotation marks omitted.) Sgarellinov. Hightower, 13 Conn. App. 591, 595-96, 538 A.2d 1065 (1988).
Here the defendant presented evidence of an extraordinary lack of communication between these litigants. They do nothing in concert, even if their refusal to cooperate negatively impacts upon the children.
As is often true in these situations, the court is faced with a question of credibility. For the defendant to be found in contempt, the plaintiff must show that there has been noncompliance and such noncompliance was willful. See Meehan v. Meehan, 40 Conn. App. 107,669 A.2d 616 (1996). Where there are good faith efforts to comply with court orders, contempt is precluded. Here the court finds that the defendant made a good faith effort to comply with existing court orders.
This court must reiterate part of Judge Bassick's earlier August 1998 order. When the court found that the plaintiff was in contempt of prior visitation and custody orders, the court ruled, "To purge herself of the contempt, the plaintiff for the future must discuss and confer with the defendant regarding `health, education, camps, private school and colleges'" That language applies equally to the defendant.
The motion for contempt is denied.
D. Attorney's Fees
The last series of motions before the court all involve the issue of attorney fees. The plaintiff has filed a motion for order re: counsel fees wherein she has requested that the defendant assume full responsibility for all the counsel fees of the attorney for the children and the guardian ad litem.[19] The guardian ad litem and the attorney for the children have filed, respectively, a motion for order and a motion for payment of fees.
Connecticut General Statutes 46b-62[20] authorizes the payment of attorney fees in certain situations. This court has considered all of CT Page 2719 those criteria. Additionally, one cannot help but note that the plaintiff and the defendant equally share responsibility for the amount and duration of litigation in this manner. Because neither can agree on even the simplest aspect of support payments, custody and visitation, neither can shift blame for the length and nature of the litigation before this court. Accordingly, the plaintiff and the defendant should be accountable for their own counsel fees. Plaintiff's motion for payment of her counsel fees is therefore denied.
The court has also examined the requests for payment submitted by both the attorney for the minor children and the guardian ad litem. That of the guardian appears to be reasonable under the circumstances and is limited to the issues before the court. Unfortunately, the bill for the attorney for the minor children contains requests for payment for general research as well as a payment for time spent venting a personal grievance against one of his opposing counsel.[21] The court cannot authorize these later requests.
Furthermore, the bulk of counsel's work on behalf of his clients involved consultation with the guardian ad litem. The court will award both the same rate of compensation for both, that set by the guardian ad litem. Their requests for payment of fees are ordered granted as modified. Plaintiff and defendant will share these costs equally.
Orders shall enter on these motions as herein noted.
DEWEY, J.