390 A.2d 936.

ELIZABETH CAHILL, *a.k.a.* LIZZY CAHILL *v.*
PASQUALE ANTONELLI *et al.*

AUGUST 30, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J. This is a civil action brought by the plaintiff Elizabeth Cahill to compel the children of her deceased brother James Antonelli to convey to her the legal title to certain real estate located at 101 West Natick Road, West Warwick, Rhode Island. Following a nonjury trial in Superior Court, the trial justice filed a written decision in which he found that the property was held in trust by the heirs of James for the benefit of his sister Elizabeth. Accordingly, a judgment was entered on November 19, 1976, requiring the defendants Carmella Dauplais and Pasquale Antonelli to convey the property to Elizabeth Cahill. The case is before us on the defendants' notice of appeal from the Superior Court judgment.

The pertinent facts as found by the trial justice are as follows. Upon the death of Pasquale Antonelli, Sr., the father of plaintiff and grandfather of defendants, title to nine lots of real estate, including the family homestead, passed by intestacy to his three children. The family homestead consisted of two lots numbered 362 and 363 on Richmond Plat No. 2 in West Warwick and are the only lots with which we are concerned for purposes of this appeal.

In 1931, the three children of Pasquale, namely, James Antonelli, Maria Tedeschi and Elizabeth Cahill, conveyed all of their interest in the subject lots to their mother, Carmella Antonelli. James and Maria at that time were married and had moved out of the family home. Elizabeth, however, had remained single and resided at home to take care of Carmella. When Maria was married, she received a cash payment in exchange for her expectancy as a probable heir of

Carmella. Upon receiving this payment, she disclaimed any further interest in the real estate.

On January 26, 1940, Carmella, Elizabeth and James entered into a transaction concerning the property. First, Carmella conveyed the subject lots by deed to her daughter Elizabeth on the understanding that Elizabeth would take care of her for "the rest of her life." Next, Elizabeth conveyed the property to James by deed without consideration upon his representation that there were certain liens on the real estate that had to be "taken care of." He assured her that her interest would be protected, and that the property was still hers. James recorded both deeds on June 18, 1954.

In 1946 Elizabeth was married to Charles Cahill and moved to the second floor of the house on West Natick Road. Carmella continued to reside on the first floor and Elizabeth continued to take care of her mother who in the later years of her life could do very little for herself. One year before her death, Carmella was moved to James' house where Elizabeth continued to take care of her until the latter's death on June 13, 1954.

Elizabeth testified that from 1954 to James' death in 1971, James repeatedly assured her, in response to her questions, that the house was hers and that "everything [was] straightened out," but that James never reconveyed the property to her. Under the assumption that the property was hers, Elizabeth paid the taxes and costs of maintenance of the house from 1940 until she was advised to vacate the premises in 1976.

In 1971 James died intestate, and the property descended to his two children, Carmella Dauplais and Pasquale Antonelli, the defendants herein. Carmella and Pasquale paid James' wife $9,257.49 for a release of her dower interest in the property. On James' death, Carmella Dauplais and Pasquale advised Elizabeth that Carmella was now the owner of the property and that Elizabeth could live there if

she paid the taxes and kept the property in good repair. Although Elizabeth disagreed and contended that the property was her own, she declined to take legal action and "went along" with it. Carmella was ultimately notified by the minimum housing inspector that if repairs were not made the property would have to be torn down. Since it was impracticable for her to make these repairs, she advised Elizabeth to vacate the premises by March 27, 1976.

The trial justice accepted the testimony of plaintiff and found that the facts warranted the imposition of both a resulting and a constructive trust on the property.

On appeal, defendants contend that the trial justice committed reversible error in reaching these conclusions of law. With regard to the establishment of the constructive trust, they argue that there is no evidence of any fraud on the part of James Antonelli sufficient to raise such a trust. In support of their argument, they cite *Broadway Building Co.* v. *Salafia*, 47 R.I. 263, 132 A. 527 (1926), where we held that when the only evidence of fraud is the violation of an express oral promise to reconvey, which violation was not intended at the time the promise was made, the trust created is simply an oral express trust unenforceable by reason of the Statute of Frauds.[1] This case, however, may be distinguished from the facts at bar, where clearly a constructive trust, and not an oral express trust was created. *See Del Greco* v. *Del Greco*, 87 R.I. 435, 142 A.2d 714 (1958).

Although the rule in Rhode Island is that we will refuse to predicate a constructive trust on the mere refusal to execute a parol trust where there is no fraud in the inception of the transaction, *Graham* v. *Williams*, 92 R.I. 102, 166 A.2d 412 (1961), this rule does not apply to situations involving persons in a fiduciary relationship. *Matarese* v. *Calise*, 111 R.I. 551, 305 A.2d 112 (1973); Bogert, *Trusts & Trustees* §496 (2d ed. 1964). Where a fiduciary relationship is involved, a constructive trust will arise if the plaintiff established first, that a

---

[1]G.L. 1956 (1969 Reenactment) §9-1-4.

fiduciary relationship exists between the parties and second, that a breach thereof occurred. *Sladen* v. *Rowse,* 115 R.I. 440, 347 A.2d 409 (1975); 1 Scott, *Trusts* §44.2 (3d ed. 1967). The actual existence of any fraudulent intent need not be shown because the breach of the fiduciary duty itself amounts to constructive fraud. *Materese* v. *Calise, supra.*

The trial justice made the express findings that James stood in a relationship of trust and confidence with Elizabeth and that he abused this trust and confidence by persuading her to convey the real estate to him for the purpose of clearing certain liens. These findings are amply supported by the evidence which shows that Elizabeth always looked to her brother for advise and considered him to be the nominal head of the family before she was married. He promised to reconvey the property and never kept his promise. In addition, the trial justice's findings make apparent that, although not stated as a conclusion in his decision, an agency relationship was created between Elizabeth and James when she allowed James to act on her behalf in clearing up liens and he consented to do so. *See* Restatement (Second) of *Agency* §§1-3 (1958). The existence of an agency supports the finding that a confidential relationship was established between brother and sister, as an agent always stands in the position of a fiduciary to his principal. *Matarese* v. *Calise, supra; Carter* v. *Abramo,* 201 Md. 339, 93 A.2d 546 (1953); *Kessler* v. *Bishop,* 51 R.I. 202, 153 A. 247 (1931). Since James did not reconvey the property when the liens were purportedly cleared, the evidence supports the conclusion that he breached his fiduciary obligation as the agent and confidant of Elizabeth for his personal gain. On the basis of his findings, therefore, the trial justice correctly found that a constructive trust was established by clear and convincing evidence. *Sladen* v. *Rowse, supra; Matarese* v. *Calise, supra; Oldham* v. *Oldham,* 58 R.I. 268, 192 A. 758 (1937); *Tyler* v. *Tyler,* 54 R.I. 254, 172 A. 820 (1934); *see Desnoyers* v. *Metropolitan Life Insurance Co.,* 108 R.I. 100, 272 A.2d 683 (1971).

This court will not disturb the findings of a trial justice sitting in equity unless they are clearly wrong or the trial justice misconceived or overlooked material evidence on a controlling issue. *Sarni* v. *Armada*, 118 R.I. 348, 373 A.2d 822 (1977); *Tefft* v. *Tefft*, 105 R.I. 496, 253 A.2d 601 (1969). In the instant case on the basis of the evidence presented, we are of the opinion that the trial justice was not clearly wrong in concluding that a constructive trust was created.

Ordinarily where a constructive trust is created, the existence of a resulting trust is foreclosed. Bogert, *Trusts & Trustees, supra* §451 at 613-14; *see* 5 Scott, *Trusts, supra* §440.1 at 3315. In any event, in light of our holding that a constructive trust was established, we need not consider the defendants' contentions on the issue of the resulting trust.

The defendants' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

*Clinton L. Poole*, for plaintiff.

*Paul A. Anderson*, for defendants.