DECISION
The genesis of this dispute is the "on again — off again" relationship between plaintiff, Albert E. Nani ("Nani" or "plaintiff") and defendant Karen A. Vanasse ("Vanasse" or "defendant"). Plaintiff asserts a breach of an alleged contract between the parties entitling them each to an equal interest in certain real estate located at 16 Commonwealth Avenue in Barrington, Rhode Island (the "Property"). The plaintiff maintains that the parties purchased the property jointly and that the defendant has been unjustly enriched by refusing to acknowledge his interest in the real estate. As a result, the plaintiff requests that the Court impose a constructive trust on the property and order the Property to be partitioned and sold. The defendant argues that she has not breached the parties' agreement and, therefore, is entitled to remain in possession of the Property.[1] The Court's equity jurisdiction is pursuant to G.L. 1956 § 8-2-13.
 Facts and Travel
As the Court commences its examination of the record, it is reminded of William Shakespeare's observation that "Some Cupid kills with arrows, some with traps."[2]
The Court makes the following findings of fact. The plaintiff is a forty-eight year-old man who had a brief career as a practicing attorney and is currently serving as a member of the United States National Guard in New Jersey. The defendant is a forty year-old woman who has recently found employment as an assistant to elderly citizens in need of home care. She currently lives with her two children at the disputed property in Barrington, Rhode Island. Neither party is a neophyte to marriage, as the plaintiff has been married once before and the defendant has been married three times previously.
The parties to this action met in August 2001 and, thereafter, were engaged in an intimate relationship that — excluding intermittent breaks — lasted nearly three years. After almost two years of dating, in June 2003, the parties' relationship temporarily dissolved over Vanasse's concerns about the plaintiff's long-term intentions. A couple of months later, in September 2003, the couple resumed their relationship following a dinner at which Vanasse demanded that Nani demonstrate his seriousness about making a long-term commitment by proposing and, subsequently, purchasing a home with her. The defendant told the plaintiff that she "needed a better deal" if she were to get back together with him. Shortly thereafter, during that same month, the plaintiff gave the defendant a $6,000 engagement ring. The ring was acquired with contributions of approximately half the purchase price from each of the parties.
Almost immediately following the engagement, the couple began searching to buy a home because, according to the defendant, "it was the next logical step." The process was accelerated when the defendant learned she was pregnant some time in late September or early October. On October 14, 2003, the parties both signed the Purchase and Sales Agreement to buy the Property — 16 Commonwealth Ave., Barrington, Rhode Island — for the price of $225,000. At that time, $11,250 was paid as a deposit to be put towards the purchase price. In total, each party contributed approximately $9,000 to the acquisition of the Property. The parties purchased the Property with the understanding that Nani would be responsible for paying the mortgage while Vanasse would be accountable for paying the utilities and other miscellaneous housing expenses. To finance the purchase, the couple applied for and obtained a mortgage in the amount of $210,000. Both the plaintiff and the defendant obligated themselves to the lender by signing the note and the mortgage.
On October 27, 2003, the parties obtained a marriage license in contemplation of their future wedding. Three weeks later, on November 14, 2003, the parties closed on the Property. Despite the parties' understanding that they would own the Property jointly, title was placed in Vanasse's name as sole owner of the real estate out of concern that plaintiff's creditors — student loan providers — might encumber the real estate if his name were on the deed.[3] Almost contemporaneously with the completion of the land transaction, the defendant was laid off from her job.
Vanasse moved into the home with her son from a prior marriage on November 28, 2003, and curiously proceeded to change all of the locks to the home. Thereafter, the couple's relationship began to completely deteriorate. In the weeks immediately following the move, Vanasse made a number of improvements to the house — painted the walls, laid carpeting, replaced the kitchen and bathroom floors — without the assistance of the plaintiff. The deterioration of the relationship was furthered evidenced by the unusually long time it took for the plaintiff to acquire keys to the Property and the defendant's staunch opposition to the plaintiff moving into the home with his two dogs. Ultimately, although the plaintiff purchased a lawn mower, grill, and iron filter for the house's water system, he never moved into the home on a permanent basis. Despite not residing at the Property, Nani continued to make all of the mortgage payments without contribution from the defendant who remained unemployed.
The couple's animosity intensified with the birth of their son on June 9, 2004. Vanasse moved out of the Property immediately following her discharge from the hospital because, upon her arrival at the house, she became infuriated by the presence of Nani's dogs. Nani remained in the home for two weeks until Vanasse returned. Two months later, on August 26, 2004, Vanasse called the police when Nani arrived at the Property to visit his son and requested to take the baby away from the premises. Although the incident was diffused, a custody dispute ensued.
The plaintiff filed a complaint with the Rhode Island Family Court seeking a determination of paternity, joint custody, physical placement, and child support.[4] On April 26, 2005, the court issued an order granting physical placement of the child to the defendant and regular weekend visitations rights to the plaintiff. Subsequently, on May 16, 2005, the court ruled, in conformance with an agreement by the parties, "any order of [child] support is suspended and tolled providing that the Plaintiff continue to pay the mortgage `principal, interest, taxes and insurance' for the real estate[.]" Furthermore, the court stated that "[i]n the event the Plaintiff shall fail to make such payments when due then any subsequent order of child support shall be retroactive to the date that the payment for the mortgage . . . was due."
Since the date the Property was purchased, Nani has made all twenty-three (23) mortgage payments for a total of $40,768.66. In addition, he has incurred $1,330.19 in miscellaneous expenses, including $292.86 for gas service, $683.33 to Aqua Science, and $354.00 to Roto Rooter. The defendant has paid the remaining utility expenses and costs of caring for their infant son.
On February 28, 2005, the plaintiff initiated this Superior Court action alleging that the defendant was liable for $3,500 of the purchase price of the engagement ring and half of the mortgage payments.[5] The plaintiff based his recovery on a number of theories — breach of contract, estoppel and contribution. In addition, Nani requested that the Court impose a constructive trust on the Property, that the Property be partitioned and sold for the benefit of the parties, and that the Court issue an injunction ordering the defendant to pay half of the monthly mortgage payments. The defendant denied the allegations and set forth the Statute of Frauds, estoppel, the doctrine of unclean hands and waiver, as affirmative defenses. Furthermore, Vanasse counterclaimed that Nani unlawfully slandered the title to the Property by unjustifiably filing a Notice of Lis Pendens.
On October 19, 2005, this Court heard the plaintiff's motion for preliminary injunction and continued the matter to trial. Subsequently, a bench trial was held on January 13, 2006, at which the Court heard testimony from both parties to this action.
 Standard of Review
In a non-jury trial, the trial justice sits as the trier of fact as well as of law. Hood v. Hawkins, 478 A.2d 181, 184
(R.I. 1984). "Consequently, he weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences." The factual determinations and credibility assessments of a trial justice "traditionally accords a great deal of respect . . . [because it is] the judicial officer who actually observe[s] the human drama that is part and parcel of every trial and who has had the opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." In the Matter of theDissolution of Anderson, Zangari Bossian, No. 2004-187-A., slip op. at 2 (R.I., filed Jan. 13, 2006). Id. Although the trial justice is required to make specific findings of fact pursuant to Super. R. Civ. P. 52(a), he need not engage in an extensive analysis to comply with the requirement. White v. LeClerc, 468 A.2d 289, 290 (R.I. 1983). "Even brief findings will suffice as long as they address and resolve the controlling factual and legal issues." Id.
 Slander of Title Counterclaim
The defendant asserts that the plaintiff unlawfully slandered the title to her Property because his "filing of a notice of lis pendens . . . was done willfully, maliciously and constitutes a false statement about the ownership of [the Property.]" (Def.'s Pre-trial Memorandum at 7.) As a result, the defendant seeks compensation for pecuniary losses she has suffered as a result of defending the instant action.
To recover on a claim of slander of title, the party asserting the claim must show by a preponderance of the evidence that the opposing party maliciously uttered false statements regarding the ownership of real estate and that such statements resulted in actual pecuniary loss. Arnold Rd. Realty Assocs., LLC v. TiogueFire District, 873 A.2d 119, 125-26 (R.I. 2005) (citations omitted). "A party is privileged to `assert a property interest based upon an ultimately unfounded claim without incurring liability for slander of title — provided the party asserting the property interest did so in good faith.'" Id. at 126 (quotingBelliveau Bldg. Corp. v. O'Coin, 763 A.2d 622, 630 (R.I. 2000)).
In the case at hand, there is no evidence that Nani maliciously filed a lis pendens on the Property. In fact, the evidence clearly suggests the opposite. Nani contributed approximately half of the costs of acquiring the Property, personally made all of the mortgage payments for the residence, and paid some miscellaneous upkeep expenses. Under the circumstances, it would be difficult to imagine how anyone in plaintiff's position would cease to believe that he or she had an interest in the Property. Given the facts mentioned above, and Vanasse's admission that she and Nani agreed to purchase the Property together, this Court finds that the plaintiff acted in good faith in filing the lis pendens. Therefore, the defendant has failed to meet her burden on the slander of title counterclaim.
 Constructive Trust
The plaintiff argues that the defendant has obtained legal title to the Property by fraud or, in the alternative, by breaching the parties' confidential relationship and, therefore, has been unjustly enriched. As a result, the plaintiff maintains that it would be equitable for the Court to impose a constructive trust in his favor and, ultimately, order the partition and sale of the home. In opposition, the defendant claims that a constructive trust should not be imposed because there is no evidence that she has committed fraud. Furthermore, the defendant argues that the evidence taken as a whole does not meet the standard for imposing a constructive trust.
In Rhode Island, it is well settled that "the underlying principle of a constructive trust is the equitable prevention of unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained by fraud or in violation of a fiduciary or confidential relationship."Dellagrotta v. Dellagrotta, 873 A.2d 101, 111 (R.I. 2005) (quoting Renaud v. Ewart, 712 A.2d 884, 885 (R.I. 1998) (mem.) (citing Simpson v. Dailey, 496 A.2d 126, 128 (R.I. 1985)). The party seeking the imposition of a constructive trust must prove the essential elements of the claim — the requisite relationship and subsequent breach or fraud — by clear and convincing evidence. Id. "A constructive trust arising in equity is not affected by the statute of frauds." Del Greco v. Del Greco,87 R.I. 435, 443, 142 A.2d 714, 718 (1958) (quoting Rosati v.Rossi, 47 R.I. 493, 494, 134 A. 18, 19 (1926)).
In determining whether a confidential relationship exists, the court does not apply any "hard and fast rules." Renaud,712 A.2d at 885. "The court may consider a variety of factors, including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, [and] the relative business capacities or lack thereof between the parties." Id. (quoting Simpson, 496 A.2d at 129). There is no requirement that a defendant occupy a position of dominance over the plaintiff. Simpson, 496 A.2d at 129. The determination of whether a confidential relationship exists requires an analysis of the facts and circumstances of each case.Dellagrotta, 873 A.2d at 111.
The Rhode Island Supreme Court has found confidential relationships to exist on multiple occasions in the context of a constructive trust. In Dellagrotta, the Court discussed at length one of its earlier decisions, Cahill v. Antonelli,120 R.I. 879, 390 A.2d 936 (1978), where it found a confidential relationship between two siblings:
 "In Cahill, this Court upheld a finding of a confidential relationship because the evidence demonstrated that the sister trusted her brother, looked to him for advice, and enlisted him as her agent to clear up liens on a parcel of real property. Id. at 883, 390 A.2d at 939. The sister conveyed the property to her brother, subject to a promise that he would reconvey it back to her after taking care of the liens. Id. The brother died, never having transferred the property back to his sister. Id. at 881, 390 A.2d at 938. We affirmed both the finding that the brother abused his sister's trust and confidence for his own personal gain and the trial justice's imposition of a constructive trust on the property. Id. at 883-84, 390 A.2d at 939." Dellagrotta, 873 A.2d at 111.
Similarly, in Simpson, the Court affirmed a trial court decision in which the judge instructed, and the jury found, that a confidential relationship could exist between a brother and sister. Id., at 129-30. The finding that a confidential relationship existed was warranted where the evidence suggested that the siblings had complete trust and confidence in one another and that their relationship was the "moving cause in influencing the brother to name his sister as primary beneficiary to ensure the future well-being of his family." Id. at 129. Ultimately, the Court imposed a constructive trust on the assets transferred to the sister upon her brother's death because she failed to fulfill her promise to use the funds to care for her brother's family. Id.
In the instant action, after a thorough review of the evidence, the Court finds that a confidential relationship existed between the parties and that said relationship was subsequently breached by the defendant. See Bratton v. Bratton, 136 S.W.2d 595, 601
(Tenn. 2004) ("[a]n engagement to marry creates a confidential relationship between the contracting parties"). The evidence demonstrates that the plaintiff had absolute trust in the defendant. He proposed to the defendant, contributed substantially towards the purchase of an engagement ring, obtained and filled out a marriage license, co-signed a mortgage note with her, and agreed to transfer the title of the Property they purchased together into her name only. Moreover, it was clear from both parties' testimony that the former couple purchased the home with the understanding that it would be their joint property and marital domicile for the foreseeable future. Vanasse committed a breach of this trust by refusing to allow Nani to live in the home and by declining to acknowledge his interest in the Property. Consequently, the defendant has lived virtually free of charge in the Property and has retained the title exclusively in her name. Based upon these facts, the Court finds that the defendant has been unjustly enriched at the expense of the plaintiff and, as a result, it is appropriate to impose a constructive trust on the Property in his favor. SeeDoe v. Burkland, 808 A.2d 1090, 1095 (R.I. 2002) (the Court hypothesized that a court sitting in equity might impose a constructive trust to "prevent a person from retaining a benefit received from another without appropriate payment for the same" and more specifically, "in [a] case when [a party] allegedly acquired property in his individual name during [an intimate] relationship subject to an agreement to share the same with [the other party.]").
Even were this Court not inclined to impose a constructive trust on the basis of a violation of a confidential relationship, the Court is satisfied that a constructive trust should be granted in the plaintiff's favor on grounds of fraud. "For fraud to lead to the creation of a constructive trust, the evidence must show that the holder of legal title procured title through fraud. There must be an actual misrepresentation of present intent." J.K. Social Club v. J.K. Realty Corp., 448 A.2d 130,134 (R.I. 1982) (citing Lawrence v. Andrews, 84 R.I. 133, 139,122 A.2d 132, 135-36 (1956)). In Rhode Island, to establish a prima facie case of common law fraud one must show that the defendant made a false representation intending to induce plaintiff's reliance thereon and that the plaintiff justifiably relied on the representation to his or her damage. Guzman v.Jan-Pro Cleaning Sys., Inc., 839 A.2d 504, 507 (R.I. 2003) (citing Zaino v. Zaino, 818 A.2d 630, 638 (R.I. 2003); Women'sDev. Corp. v. City of Central Falls, 764 A.2d 151, 160 (R.I. 2001)).
Here, the Court is convinced that the defendant misrepresented her intentions to marry the plaintiff in order to reap pecuniary gains. Vanasse unequivocally pressured the plaintiff into proposing to her, buying her an engagement ring and purchasing a house by telling him that she "needed a better deal" if he wanted to get back together with her. Then, immediately following the purchase of the home, the defendant took control over the Property and never allowed the plaintiff to move in. Following the birth of their child, when Nani eventually moved into the residence, the defendant feverishly objected and refused to stay there with him. Despite his making all of the mortgage payments, at no time did Nani live at the Property with Vanasse. Ultimately, the Court finds that the defendant made false representations regarding her intentions to marry the plaintiff, the plaintiff was induced into purchasing a home by said representations, and the plaintiff has sustained injury as a result of his purchase of the Property. Furthermore, the defendant's fraud has lead to her unjust enrichment and, therefore, merits the imposition of a constructive trust on the Property.[6]
 Partition and Sale
In order to receive adequate compensation, the plaintiff requests that the Court order the partition and sale of the Property with the proceeds to be divided between the parties. The defendant argues that partition by sale is neither equitable, nor proper, given the sacrifices she has made to stay at home and care for their child. After considering the circumstances of the parties, the Court finds that a partition by sale is appropriate.
Pursuant to G.L. 1956 § 34-15-16,
 "In an action for partition, the superior court may, in its discretion, upon motion of any party to the action, order the whole premises sought to be divided, or any particular lot, portion, or tract thereof or the interest of the plaintiff or plaintiffs or of the defendant or defendants in the whole premises, or in any particular lot, portion, or tract thereof, to be sold, either at public auction or by private contract, under the direction of the court, by the commissioner or commissioners appointed to divide or sell the same; provided, that if the sale is made by private contract, it shall not be made for less than the sum fixed by the court in its decree authorizing the sale by private contract."
The court is required to exercise sound discretion and consider all of the facts before authorizing a partition by sale.DeBartolo v. DiBattista, 117 R.I. 349, 353, 367 A.2d 701, 703
(1976). "However, the general rule is that inconvenience or difficulty in making the partition or hardship or substantial loss or injury to some or all of the parties does not affect the right to partition." Id. (citing 68 C.J.S. Partition § 48 (1950); De Roulet v. Mitchel, 70 Cal.App.2d 120, 124,160 P.2d 574, 576 (1945); Henkel v. Henkel, 282 Mich. 473, 481,276 N.W. 522, 524-25 (1937); Thomsen v. Thomsen, 196 Okla. 539, 543-44,166 P.2d 417, 421-22 (1946)).
Upon careful consideration of the facts, the Court finds that a partition of the Property by sale is appropriate. While the Court recognizes the hardship and inconvenience that the defendant may encounter as a result of the sale, such factors are not dispositive. The Court is of the opinion that partition by sale will achieve the most equitable result given the circumstances.
 Conclusion
Based upon the facts and circumstances presented, this Court finds that the imposition of a constructive trust is appropriate and, as a result, orders a partition and sale of the property located at 16 Commonwealth Avenue, Barrington, Rhode Island. The parties are each awarded a fifty percent (50%) interest in the fair market value of the Property after making all customary closing adjustments, including payment of the outstanding mortgage.
Since the plaintiff has no particular attachment to the property in dispute, the defendant shall be afforded a right of first refusal to purchase said property at fair market value. If the defendant does not exercise this right within thirty (30) days of the date of this decision, said property shall be placed on the market immediately and both parties shall cooperate in all aspects of the sale.
This Court further orders that the Plaintiff shall recoup fifty percent (50%) of all mortgage payments made from the date of purchase through either the date the Property is sold or until the Family Court modifies its order requiring payment of the mortgage in lieu of child support. The plaintiff is also permitted to recoup the $3,400 contribution he made towards the purchase of the engagement ring.
The parties shall submit a judgment in conformity with this decision.
[1] The defendant also filed a motion to dismiss the plaintiff's claim alleging that the plaintiff lacks standing to seek a partition of the Property because he does not have a possessory interest in the real estate. Although the defendant correctly recites the standing requirement for bringing an action for partition, see Duffy v. Maciag, 431 A.2d 1233, 1235 (R.I. 1981), her motion is dependent upon the Court's determination in this case of whether the plaintiff has such an interest. As a result, the Court will consider the appropriateness of ordering a partition after deciding the extent of the plaintiff's interest in the Property.
[2] William Shakespeare, Much Ado About Nothing, a 3, sc.1.
[3] Initially, ninety-nine percent (99%) of the interest in the Property was transferred to Vanasse and the remaining one percent (1%) was conveyed to Nani. (Pl.'s Ex. 7.) Due to concerns raised by the lender, Nani's one percent (1%) interest was shortly thereafter transferred to Vanasse. (Pl.'s Ex. 8.)
[4] Eventually, a paternity test was performed confirming Nani's paternity of the child.
[5] The defendant has represented to the Court that she is willing to refund the plaintiff the amount he contributed to the purchase of the engagement ring. (Def.'s Pre-trial Memorandum at 5.)
[6] Because the Court finds that the imposition of a constructive trust is appropriate, it is not necessary to reach the merits of the plaintiff's additional theories of recovery — breach of contract, contribution, and estoppel.