January 19, 2021

Tammi Sousa et al.          :

v.          :

Gilbert Roy, Jr., individually and as          :
Trustee of The Gilbert F. Roy, Jr.
Residence Trust—2005.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Tammi Sousa et al.          :

v.          :

Gilbert Roy, Jr., individually and as          :
Trustee of The Gilbert F. Roy, Jr.
Residence Trust—2005.          :

Present: Suttell, C.J., Flaherty, and Robinson, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiffs, Tammi Sousa (Sousa) and Charles G. Thibeault III (Thibeault) (collectively plaintiffs), appeal from the grant of judgment as a matter of law in favor of the defendant, Gilbert F. Roy, Jr., individually and as trustee of The Gilbert F. Roy, Jr. Residence Trust—2005 (defendant). This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

Prior to their respective deaths, Flora I. Roy and Gilbert Roy, Sr., owned a house located at 44 Ashburne Street in Pawtucket (the property).[1]  In approximately 1989, the couple's daughter, Linda Mary Roy, contributed funds to build an addition onto the property.  After the addition was built, Linda lived at the property with her children, who are the plaintiffs in this matter.   Gilbert, Sr., died in 1997, and, in 1998, Flora signed a quitclaim deed conveying the property to defendant, who is Linda's brother, with a reserved life estate for herself.  Flora also executed a will, bequeathing to Linda her car and $25,000, bequeathing to defendant her kitchen set, and bequeathing the rest and residue of her estate to Linda and defendant in equal shares.  Flora then gave the will to defendant, enclosed in an envelope.  In 2005, defendant conveyed his legal ownership in the property to himself, as trustee of the Gilbert F. Roy, Jr. Residence Trust—2005.

Flora lived on the property until her death in 2010.  Following Flora's death, defendant and his wife moved onto the property, where Linda continued to live.  The plaintiffs allege that in 2011 defendant signed a statement acknowledging that Linda was "entitled to 50% of the proceeds, at the time of a sale and minus all expenses

---

[1] Aside from defendant, this opinion will refer to family members who share the last name Roy by their first names to avoid confusion.  No disrespect is intended.

that [defendant had] incurred for the property" (the statement). The plaintiffs further allege that, following Linda's death in 2012, they asked defendant to sell the property and to distribute the sale proceeds, but defendant refused to do so and continued to live at the property.

The plaintiffs thereafter filed a complaint in Providence County Superior Court, asking for a declaratory judgment that defendant was holding the property in a constructive trust for their benefit, with plaintiffs having "the right upon the sale of the real estate to $25,000.00 of the sale proceeds plus one-half of the balance of the sale proceeds[,]" and asking the court to order defendant to convey a co-tenancy interest to them. The plaintiffs further asked that, if defendant refused to sell the property, the court appoint a commissioner to do so. They also asked for monetary damages and asserted claims of promissory estoppel and unjust enrichment.

According to plaintiffs' amended complaint, after Gilbert, Sr.'s death, Flora conveyed the property to defendant,

> "but with the family intention and understanding that Linda owned one-half of the house and that upon the eventual sale of the house either at her direction or following her death that she or plaintiffs would be due $25,000.00 to compensate Linda for her contribution of the funds for the house addition, and that the balance of the sale proceeds would be equally shared, one-half to Linda or her children if Linda died before the sale, and one-half to defendant or as he might designate if he died before the sale."

- 3 -

The plaintiffs called five witnesses at the jury trial: defendant; Sousa; Thibeault; defendant's wife; and Edward Stachurski, a licensed real estate broker and certified general appraiser.

The defendant testified that, although Flora gave him an envelope containing her will, he did not open the envelope until 2005, when he met with his attorney to execute his own will. The defendant also testified that, until that day in 2005, he was not aware that he owned the property; according to defendant, his mother had not discussed the conveyance with him. He testified that he did not make any statements to his mother to influence her to sign the deed to the property over to him in 1998, nor did he discuss with her any issue concerning ownership of the property or the distribution of any proceeds upon its eventual sale.

The defendant additionally testified that, due to Linda's "nagging[,]" he wrote the statement, dated March 9, 2011, that acknowledged that his sister was "entitled to 50 percent of the proceeds, at the time of sale minus all the expenses that I have incurred for the property[,]" and that, if she did not survive defendant, plaintiffs would be given her share. He described it as "a proposal" and his "offer to her[,]" and that he was "waiting for her to sign it so as to make some kind of a deal." He testified that Linda altered the statement by inserting the words "after your death[,]" meaning Linda's death, handed it back to him, and said it was "[n]ot acceptable" because she did not want her children to have to pay any expenses. According to

defendant, there were no further discussions about the statement. He testified that, after Linda died, he denied possession of the property to plaintiffs because "it was [his] house."

Sousa testified that, at some point in 1990 or 1991, there was a family conversation involving Linda, Flora, and Gilbert, Sr., about the money Linda had contributed to the addition on the property. She testified that her grandparents told Linda that she would get extra money, approximately $25,000, from the sale of the property for her contribution, and that "they'd split the house." Sousa testified that defendant was not part of these discussions and would not have known about the understanding. Additionally, Sousa testified that Gilbert, Sr., said that her stepfather, Linda's husband, "was no good, he was a drunk and a gambler," and that "they didn't want him to be able to take anything of my mother's."

Sousa further testified that she encouraged Linda to get something in writing about her partial ownership of the property, after defendant moved in, so that her mother would be protected. Sousa thereafter identified the statement, which was given to her by Linda on March 10, 2011. Sousa testified that Linda thought she and her children were "all set" after defendant signed the statement "acknowledg[ing] Linda's] interest in the house[,]" "[e]xcept for the $25,000 that wasn't on it."

Similar to Sousa, Thibeault testified that his grandfather stated that his stepfather was "not getting any of this property because the way he is, so your mom's

name is not going on anything." He testified that defendant was not present at any family conversations between 1990 and 1998 regarding the property and Linda's interest in the property. He also testified that he remembered defendant, between 2010 and 2012, saying to Thibeault and Linda: "I will take care of you guys, you guys get 50 percent of the house, an extra 25,000, and I'm not even interested in the house because I'm retiring and moving to Florida because I own seven properties there." He further testified that defendant told him, "The only reason why your mom is not on here is because of" his stepfather.

Edward Stachurski was qualified as "an expert in the field" of real estate appraisal. He testified that in 2018 plaintiffs asked him to appraise the fair rental value of the property, which he estimated was $1,800 per month between 2012 and 2018. The plaintiffs' attorney then asked Stachurski whether they had also requested the fair market value appraisal of the property as it is now and what it was without the addition, to which defendant objected because defendant was not given advance notice that there was "a change in the charge for valuation[.]" The plaintiffs conceded that there had not been discovery on this issue, and the trial justice ruled that the witness could not testify as to the fair market value of the property.

After the conclusion of plaintiffs' presentation of their case, defendant moved for judgment as a matter of law, pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. In her bench decision on the motion, the trial justice first addressed

the constructive trust claim, finding that there was "no evidence on this record, direct or circumstantial, indicating that [defendant] promised his mother that he would care for Linda[,]" nor was there any evidence that he "knew of the family understanding with respect to the property." She ultimately found that there was no evidence that defendant "procured the property by a conscious false representation to his mother[,]" and she, therefore, ruled that a constructive trust had not arisen.

Next, the trial justice addressed the promissory estoppel claim, finding that there was "no clear and unambiguous promise" created by the statement. She found that, because plaintiffs had failed to satisfy the prongs of promissory estoppel, the doctrine did not apply.

Finally, the trial justice addressed plaintiffs' claim for unjust enrichment. She noted that, for an unjust enrichment claim, a "plaintiff must confer a benefit upon the defendant" and she found that this did not happen in the instant case.

Accordingly, the trial justice granted defendant's motion for judgment as a matter of law and entered an order to that effect. Final judgment was entered on February 12, 2019. The plaintiffs timely appealed.

## II

### Standard of Review

"In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court is bound to follow the same rules and legal standards as govern

the trial justice." *Lemont v. Estate of Ventura*, 157 A.3d 31, 36 (R.I. 2017) (quoting *Roy v. State*, 139 A.3d 480, 488 (R.I. 2016)). "The trial justice, and consequently this Court, must examine the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." *Id.* (brackets omitted) (quoting *Roy*, 139 A.3d at 488). Therefore, "a trial justice should enter judgment as a matter of law when the evidence permits only one legitimate conclusion in regard to the outcome." *Id.* (quoting *Roy*, 139 A.3d at 488).

## III

### Discussion

On appeal, plaintiffs argue that the trial justice committed three errors. First, plaintiffs assert that the trial justice misapplied the law of constructive trusts to the facts. Second, with respect to their promissory estoppel claim, plaintiffs contend that the trial justice improperly found the alleged contract to be ambiguous and unenforceable. Third, plaintiffs maintain that the trial justice erred in her analysis of plaintiffs' unjust enrichment claim and in limiting plaintiffs' examination of Stachurski regarding the appreciation in value of the property created by the addition. We address these claims of error *seriatim*.

# A

## Constructive Trust

The plaintiffs first assert that the trial justice misapplied the law of constructive trusts to the facts of this case. Specifically, plaintiffs argue that the trial justice applied the wrong caselaw and that she overlooked "the clear and convincing evidence presented at trial[.]" In making this argument, they point to defendant's knowledge of the family understanding, as evidenced by the statement.

"This Court previously has held that 'the underlying principle of a constructive trust is the equitable prevention of unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained by fraud or in violation of a fiduciary or confidential relationship.'" *Connor v. Schlemmer*, 996 A.2d 98, 109 (R.I. 2010) (brackets omitted) (quoting *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 111 (R.I. 2005)). "To demonstrate that the imposition of a constructive trust is appropriate, 'a plaintiff is required to show by clear and convincing evidence (1) that a fiduciary duty existed between the parties and (2) that either a breach of a promise or an act involving fraud occurred as a result of that relationship.'" *Id.* (quoting *Manchester v. Pereira*, 926 A.2d 1005, 1013 (R.I. 2007)). "With respect to real property there must be some element of fraudulent conduct by the person in possession of the property in procuring the conveyance in order for a constructive trust to arise." *Curato v. Brain*, 715 A.2d 631, 634 (R.I.

1998). "The actual existence of any fraudulent intent need not be shown because the breach of the fiduciary duty itself amounts to constructive fraud." *Cahill v. Antonelli*, 120 R.I. 879, 883, 390 A.2d 936, 938 (1978); *see also J.K. Social Club v. J.K. Realty Corp.*, 448 A.2d 130, 134 (R.I. 1982) (constructive trust operates in presence of fraud or breach of a fiduciary relationship).

Our review of the record reveals that, although the parties agreed that a fiduciary relationship existed, plaintiffs failed to demonstrate that defendant procured the conveyance through a misrepresentation to Flora, or in any way breached his fiduciary duty, amounting to constructive fraud. *See Curato*, 715 A.2d at 634; *Cahill*, 120 R.I. at 883, 390 A.2d at 939. The record is, in fact, devoid of any evidence that indicates that defendant made a promise to Flora regarding the property or that defendant "abused [Flora's] trust and confidence by persuading her to convey the real estate to him[.]" *Cahill*, 120 R.I. at 883, 390 A.2d at 938. Sousa herself testified that she was unsure if defendant made any promises to Flora at any time regarding the property and that she was not aware of Flora's mindset at the time of the conveyance. We agree with the trial justice that "[t]here is no evidence on th[e] record indicating that [defendant] knew of the family understanding with respect to the property. In fact, the record shows otherwise." In their testimony, both plaintiffs indicated that defendant was *not* present at any of the family

conversations concerning the property and he would not have known about the alleged understanding.

The plaintiffs additionally argue that the statement evinces that defendant knew about the family understanding; however, the statement in no way indicates that defendant procured the property by a false representation to Flora or breached a promise to her. *See Curato*, 715 A.2d at 634; *Cahill*, 120 R.I. at 883, 390 A.2d at 938. As such, plaintiffs failed to present evidence that would establish that defendant breached a promise or that "an act involving fraud occurred as a result of [the fiduciary] relationship." *Connor*, 996 A.2d at 109 (quoting *Manchester*, 926 A.2d at 1013).

Accordingly, we discern no error in the trial justice's finding in favor of defendant on the constructive trust claim.

**B**

**Promissory Estoppel**

The plaintiffs next contend that the trial justice erroneously found the alleged contract to be ambiguous and unenforceable regarding their promissory estoppel claim. Specifically, they argue that the statement was "a promise which [defendant] should have reasonably expected Linda to rely upon in forbearing to pursue a claim against him, and that Linda did, in fact, accept the offer and therefore did not make

a claim against [defendant], and that injustice can only be avoided by enforcing [defendant's] promise."

This Court defines promissory estoppel as "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance, and therefore is binding if injustice can be avoided only by enforcement of the promise." *Andrews v. Lombardi*, 231 A.3d 1108, 1130 (R.I. 2020) (quoting *Cote v. Aiello*, 148 A.3d 537, 547 (R.I. 2016)). "Application of the doctrine of promissory estoppel also has been extended to situations in which the promisee's reliance on the promise was induced, and injustice may be avoided only by enforcement of the promise." *Id.* (quoting *Cote*, 148 A.3d at 547). Promissory estoppel requires: (1) a clear and unambiguous promise; (2) reasonable and justifiable reliance upon the promise; and (3) detriment to the promisee, caused by his or her reliance on the promise. *Cote*, 148 A.3d at 547.

We first note that, even if the statement were construed to contain an unambiguous promise, Linda, or her children, would not be entitled to 50 percent of the proceeds until "the time of sale"—an event that clearly had not occurred when this case was tried. At the very least, plaintiffs' claim of promissory estoppel had not yet ripened into a cause of action.

More significantly, however, the trial justice found that plaintiffs failed on the first prong—a clear and unambiguous promise—because of the phrase "after your

- 12 -

death[,]" which was handwritten on the statement by Linda. The first paragraph of the statement reads as follows:

> "I, Gilbert Roy am acknowledging that you, Linda Roy, are entitled to 50% of the proceeds, at the time of a sale and minus all expenses that I have incurred for the property located at 44 Ashburne St., Pawtucket, 02861."

The plaintiffs submitted two versions of this statement into evidence, one containing the handwritten "after your death" language modifying the first paragraph and one without such a change.

We agree with the trial justice that this modification shows an "expense adjustment," as the language would affect the amount owed to defendant by plaintiffs, depending on whose death "your" refers to. The writing does not make clear who "your" is meant to identify, nor is it clear whether such a change was agreed to, because the version without the "after your death" language was already signed by defendant. This modification creates an ambiguity and, as such, plaintiffs' promissory estoppel claim fails.

Thus, we find no error with the trial justice's finding that plaintiffs failed to establish a valid promissory estoppel claim.

## C

## Unjust Enrichment

The plaintiffs' final assertion is that the trial justice erred in her analysis of plaintiffs' unjust enrichment claim.[2]

It is well settled by this Court that "to recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for the recipient to retain the benefit without paying the value thereof." *South County Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 210-11 (R.I. 2015) (brackets omitted) (quoting *Emond Plumbing & Heating, Inc. v. BankNewport*, 105 A.3d 85, 90 (R.I. 2014)).

The trial justice found that the plaintiffs did not confer a benefit upon the defendant and, additionally, that the second and third prongs of the analysis were not met. We agree and can dispense with this argument easily because the plaintiffs

---

[2] The plaintiffs, in making their argument in support of their claim of unjust enrichment, additionally assert that the trial justice erred in limiting plaintiffs' examination of Stachurski regarding the appreciation in value of the property created by the addition; however, they present no argument beyond merely stating that this action was in error. As a result, plaintiffs have waived this issue for our review by "simply stating this issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues." *State v. Andrade*, 209 A.3d 1185, 1197 (R.I. 2019) (brackets and deletion omitted) (quoting *State v. Patino*, 93 A.3d 40, 58 (R.I. 2014)).

presented no evidence to suggest that they conferred any kind of benefit upon the defendant. The plaintiffs' contention that Linda's financial contributions to the construction of an addition onto her parents' home constituted a benefit to the defendant is simply too attenuated to warrant the equitable remedy of unjust enrichment. Accordingly, we find that the trial justice did not err in her analysis of the plaintiffs' unjust enrichment claim.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

Justice Goldberg, Justice Lynch Prata, and Justice Long did not participate.

Justice Flaherty participated in the decision but retired prior to its publication.



## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Tammi Sousa et al. v. Gilbert Roy, Jr., individually and as Trustee of The Gilbert F. Roy, Jr. Residence Trust — 2005. |
| **Case Number** | No. 2019-140-Appeal. (PC 13-5564) |
| **Date Opinion Filed** | January 19, 2021 |
| **Justices** | Suttell, C.J., Flaherty, and Robinson, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Robert J. Ameen, Esq. <br> For Defendant: <br><br> Christopher M. Lefebvre, Esq. |